PROVOSTY, J.
The Pizzini Hotel and the Mitchell store in the town of Crowley stand within about six feet of each other. The roof of the front porch of the Mitchell store and the floor of the second story gallery of the Pizzini Hotel are on the same level, and both extend over the sidewalk. The roof is flat and extends laterally across the narrow space between the two buildings, so that one may step upon it from the adjoining gallery. And any -one doing so finds himself opposite the space between the two buildings and near the telephone and electric light wires of the Mitchell building, which are attached to the side of the Pizzini building at and near the front corner of it.
During a wind and rain storm in the night two or more of the cable or lead wires of the electric light plant had broken in front of the Pizzini Hotel. One of the ends had fallen to the street pavement and lay there “spitting fire.” Two others had dropped upon the roof of the front porch of the Mitchell store and, this roof being of metal, had communicated to it the heavy electric current they carried.
E'arly in the morning complaints began coming to the office of the defendant company of telephones out of order. The trouble consisted of a buzzing sound upon the lines. The persons in the office knew that this was caused by the telephone and electric light wires being in close proximity to each other, though not in actual contact. Some 20 different complaints of this kind had already been registered at the defendant company’s office by a quarter past 7 in the morning when plaintiff, who was a trouble and line man of the defendant company, reached there for his day’s work. The Pizzini Hotel and the Mitchell store were among the complainants, and plaintiff was sent at once to ascertain at what point the lines serving these two buildings were in proximity. When he came to the end of cable on the street pavement “spitting fire,” he prudently picked it up and put it in the gutter. He then went into the Pizzini Hotel and up to the second story front gallery and stepped upon the iron roof of the Mitchell store opposite the space between the buildings. By simply looking at the wires he could then have ascertained whether they were in too close proximity or not. There was no necessity of his touching them. In *633 fact, on being sent on this mission, he had been warned not to touch any wires. Thoughtlessly, for some reason he cannot explain, if for any, he took hold of the telephone wire. The telephone wire was grounded, so that by thus taking hold of it he completed the circuit between it and the electrically charged iron roof upon which he stood, and the result was that he received a shock that at once made him unconscious and caused him to topple over upon the iron roof. Fortunately just at that moment the power was shut off at the plant; information having reached there of the cables having been broken. He would else inevitably have been killed. As it was his right hand and the back of his head were badly burnt.
For these injuries and for his sufferings he sues the defendant company and the town of ■Crowley in damages. The town of Crowley owns and operates the electric light plant.
The negligence alleged against the telephone company is that it did not furnish him with rubber boots and gloves with which to do his work, and that it sent him to this •dangerous place without having sufficiently warned him of the danger.
The evidence shows that linemen and trouble men of telephone companies do not need and do not use rubber boots and gloves in doing their work; and it shows that plaintiff was not sent to do any dangerous work nor into any dangerous place but simply to ascertain by ocular inspection at what point the wires had come in too close proximity to ■each other; and it shows furthermore, that plaintiff was an experienced lineman whom the defendant company could not have had any reason to suspect of being as ignorant ■of the dangers from electricity as he now pretends that he was.
We fail to discover any negligence whatever on the part of the defendant company.
But the case stands differently with the town of Crowley.
“A municipal corporation has a dual character, the one public and the other private. * * • In the former case its functions are political and governmental. * * * In its second character (that is, in the exercise of its purely municipal functions or the doing of those things which relate to special or private corporate purposes), the corporation stands upon .the same footing with a private corporation and will be held to the same responsibility with a private corporation for injuries resulting from its negligence.” 28 Cyc. 1257.
See Pontchartrain R. R. Co. v. New Orleans, 27 La. Ann. 162; Stewart v. New Orleans, 9 La. Ann. 461, 61 Am. Dec. 218; Bennett v. New Orleans, 14 La. Ann. 120; New Orleans v. Kerr, 50 La. Ann. 413, 23 South. 384, 69 Am. St. Rep. 442 ; 28 Cyc. 1263; 20 A. & E. E. 1196.
“It is held, as a rule, that a city in supplying water or light to its inhabitants acts as a private, corporation and is subject to the same duties and liabilities.” 20 A. & E. E. 1197.
Now plaintiff alleges that the defendant town was negligent in that it well knew the dangerous condition in which its ' electric wires were and yet took no steps to rectify the situation until after he had been injured.
There can be no question that to have left these broken ends of highly charged wire in the position in which plaintiff found them, would have been the grossest kind of negligence, making the defendant town responsible for all consequences, if the agents of the defendant town knew of this dangerous condition of things. The sole question must therefore be as to whether the agents of the town had such knowledge. The evidence shows that they had no knowledge of it; but if this condition of things had existed so long that it was their legal duty to have had knowledge of it, or if by the use of means which it was the legal duty of the defendant town to have provided but which were not provided they would have had knowledge of it, then the legal situation is as if 'they had such actual knowledge; or, in other words, the failure to have had such knowledge would then in itself constitute actionable negligence. *635 Mitchell v. Charleston Light & Power Co., 45 S. C. 158, 22 S. E. 767, 31 L. R. A. 577; Columbia v. Woodbury, 136 U. S. 473, 10 Sup. Ct. 990, 34 L. Ed. 477.
The evidence shows that there had been a storm during the night which might well have, as it actually did, caused the wires to fall, and that at so late an hour as that at which plaintiff was injured, when the telephone company was already sending its repair men on their round, no steps had yet been taken by the agents of the defendant town to ascertain whether the storm had not disturbed the electric light wires and brought about a dangerous condition of things; the evidence also shows that, by means of an instrument known as a “ground'detector,” the person in charge of an electric light plant is enabled to know when a break has occurred in the wire of any circuit, and that the plant of the defendant was provided with such an instrument, but that it was out of order.
Pretermitting the point of whether enough time had not elapsed since the breaking of these wires for the defendant town to have been charged with legal knowledge of their condition, even apart from the facility afforded by such an instrument as the “ground detector” above mentioned (that is to say, even on the assumption of the agents of the town having had no other means than ordinary inspection for discovering such a break in the wires), we think that the clear legal duty rested upon the defendant town to have had this instrument at its plant and to have kept it in good order and to have shut off the current from any circuit, the wires of which were shown by this instrument to be broken.
“Persons using dangerous agencies are required to use the utmost care to prevent injuries and to adopt every known safeguard.” 29 Cye. 460; Potts v. Shreveport Beit It. Co., 110 La. 1, 34 South. 103, 98 Am. St. Rep. 452, and cases there cited.
Electrical companies are required to “have due regard to the existing state of science and of- the art in question.” 15 Cyc. 472. Had this instrument been in good order, the fact of these wires being broken would have been known, and the persons in charge of the plant would have cut off the circuit to which these wires belonged long before the accident to plaintiff.
Three of the fingers of plaintiff’s right hand (the middle and the little fingers and that between) were so badly burnt that they have become rigid and bent in, so as to be of no use; in fact, worse than if amputated. After about a year the skin had grown back over the burnt place on plaintiff’s scalp; and the disfigurement resulting therefrom is now but slight, if any. Plaintiff’s sufferings in the healing process were great and long protracted. The judge dismissed the suit as against the town and gave judgment against the telephone company for $5,000. We have taken a different view in regard to which one of the defendants is liable but are not disposed to disagree with the view thus taken by the judge as to the proper amount of damages to be allowed in the case. In the case of Smullins v. Shreveport Electric Light & Power Co., 116 La. 1034, 41 South. 248, where the injuries were very similar, a verdict of $8,000 was approved.
The judgment appealed from is set aside, and it is now ordered, adjudged, and decreed that the suit of plaintiff be dismissed as against the Cumberland Telephone & Telegraph Company, and that as against the town of Crowley the plaintiff Paul Borell have judgment in the sum of $5,000, with legal interest from this date, and the costs of suit.