**LAYNE v. LOUISIANA POWER & LIGHT CO. et al. ***

No. 4970.

Court of Appeal of Louisiana.
Second Circuit.

May 2, 1935.

Warren Hunt, of Rayville, for appellant.

Hudson, Potts & Bernstein, of Monroe, for appellees.

*Rehearing granted June 6, 1935.

DREW, Judge.

This suit arose out of an accident occurring at Mangham, La., on the afternoon of May 9, 1933. The plaintiff, while engaged in putting a corrugated iron roof on the gin house owned by the Mangham Gin Company, came in contact with a high power transmission line owned and operated by the Louisiana Power & Light Company, receiving severe burns and injuries. He sued the said Power & Light Company and the insurer, Continental Casualty Company, praying for judgment in solido in the sum of $30,000.

He alleged the following acts of negligence on the part of defendant Power & Light Company, after asserting it was engaged in manufacturing, distributing, and selling electrical energy throughout the state of Louisiana, and owned and operated the transmission line with which plaintiff came in contact:

(a) That it strung an uninsulated, high voltage wire on a pole line so that said wire was only 14 inches from the edge of the roof covering said gin house; (b) that it allowed entirely too much sag in this wire between the poles, which were 160 feet apart, and that the sag was sufficient to allow a light wind to blow the wire to within one quarter of an inch of the roof of said building; (c) that there were no warning signs of any kind or character near said wire or in the vicinity of the gin house; and (d) that the said wire was strung only 26 feet above the ground when it should have been strung 35 to 40 feet above the ground.

Plaintiff also alleged that he had observed said uninsulated wire and handled himself, his tools, and material in a most careful and prudent manner at all times while on said roof, being specially cautious that he did not come in contact with said wire; and that, except for the unforeseen intervention of the wind in suddenly and without warning blowing said wire toward and near to the roof of said gin house, the wire could not and would not have come in contact with the corrugated roofing he had in his hand.

He itemized his damages and prayed for judgment accordingly.

■ Defendants filed exceptions of no cause or right of action, which were overruled below and are again urged here. The exception is based upon the allegation above recited wherein plaintiff alleged he knew the wire was uninsulated and dangerous. Defendants urge that with this knowledge the plaintiff alleged, he voluntarily exposed himself to a danger he realized and could have avoided through proper care and prudence. We find no merit to the exception. Plaintiff has alleged acts of negligence on the part of defendant Power & Light Company and has not alleged any negligence on his part, to the contrary, the petition disavows any negligence on the part of plaintiff. The exception was properly overruled.

Both defendants answered denying any negligence on the part of Louisiana Power & Light Company and pleading contributory negligence on the part of plaintiff.

The Maryland Casualty Company and Mangham Gin Company intervened in the suit as parties plaintiff, alleging the plaintiff had secured judgment against them for compensation for a period of 400 weeks, at the rate of 65 per cent. of his weekly wage, and prayed that they be subrogated to the rights of plaintiff against defendants for an amount equal to the amount of the judgment secured by plaintiff against them. It is admitted by both plaintiff and defendants that the Maryland Casualty Company is entitled to what they pray for in case judgment is rendered against defendants.

After trial had below, there was judgment for defendants rejecting the demands of plaintiff, from which judgment he has perfected this appeal.

Although the lower court gave no written reasons, it is stated in brief by defendants that it found the Louisiana Power & Light Company to be negligent in stringing its high voltage uninsulated wire in such close proximity to the gin house, but held that plaintiff was guilty of contributory negligence in coming in contact with it.

■■ There can be no doubt about the negligence of the Louisiana Power & Light Company, which will hereafter be spoken of as defendant.

The plaintiff, a carpenter sixty-eight years of age and apparently healthy, was injured by coming in contact with the high power electric wire owned and used by defendant. At the time of the accident he was on the roof of the gin house owned by the Mangham Gin Company. He had been engaged in the carpenter trade for nearly forty years and at the time of the accident was so engaged, having been employed by said gin company to reroof its gin house with corrugated tin. The gin house was a frame building. The comb or ridge of the roof of this building runs nearly east and west and is 28 feet, 3 inches from the ground. From the comb or ridge the roof slopes down with a pitch of about

8 inches to the foot. On the north side of the gin house there is a hip roof, or shed, constructed about 13 feet below the eaves of the main roof. The shed runs the entire length of the building. The west end of the building is about 6 feet from a public highway, running north and south. The gin house was built with metal roofing, about 1915, and many years before the power line of defendant was constructed. About 30 feet south of the gin house there is a pole, placed there by said defendant, which is about 29 feet above the ground, carrying a cross-arm near the top on which the wires were strung. About 160 feet north of this pole is another pole, not quite so high, to which the same wire is connected. The wire is either a No. 4 or 6 round copper wire, entirely uninsulated throughout the entire length of this span. It passes parallel to the west face of the gin house and is approximately 2 feet below the comb or ridge of the roof and is by actual measurement 16 inches west of the west edge of the north side of said metal roof. It is a little farther west of the south side of said roof, due to the fact that the south pole sits farther to the west than does the north pole. On the south pole there is an elevated platform on which there are three condensors, and some other electrical equipment.

On the day of the accident, plaintiff was working on the north side of the roof. The corrugated iron or tin with which he was covering the gin house was 7 feet long and 2½ to 3 feet wide, ordinary 26-gauge corrugated roofing. He held himself on the roof by means of a ladder which lay flat on the roof and was held in place by hooks on the upper end, which fit over the comb or ridge of the roof. He started to work on the east end of the roof and, as he would put in place and nail one length of tin, he would move his ladder over in order to put on the next strip. He had continued in this manner until he had laid the last full size piece of roofing, which did not entirely cover the surface of the roof. A full size piece of the roofing being more than was necessary, he descended to the ground and split a piece of the roofing lengthwise. The strip he cut to use was filed in evidence, and is about 7 feet long by 10¼ inches wide. He again ascended to the roof and was in more or less of a lying down position on the ladder, with his left hip about the fifth rung from the bottom of the ladder, which was several feet below the ridge or comb of the roof. One negro helper was sitting upright on the ladder below him and another was on the shed roof. The piece of metal roofing was handed up to the helper on the ladder by the helper on the shed, who in turn passed it up to plaintiff. When plaintiff received the piece of roofing, he at once noticed that if laid as it was given to him, the rough edge would be on the inside, which was not the proper manner of placing it. He so remarked and attempted to turn the 7-foot strip of roofing around. He held it high up above his head for the purpose of turning it. Plaintiff contends and swears that he successfully turned it around, put it in place, and was attempting to jam it under the ridge roll when the wire owned by defendant contacted the edge of the roofing and knocked him unconscious. His contention is that nothing could have caused the wire to contact the roofing but the wind blowing the wire into it. We are sure plaintiff is mistaken in the cause and reason the roofing and wire were contacted. It must be borne in mind that there were only a few inches of the roof yet to be covered, not more than 4 or 5, and that plaintiff was necessarily not more than 6 or 7 inches from the west edge of the roof, and that the wire was only 16 inches from the west edge. This wire carried between spaces 13,800 volts of electricity, and to the ground something in excess of 8,000 volts. There was some wind blowing at the time, but we can safely say, from the testimony of the experts, that the wind did not blow the wire eastward more than 1 inch. It is likewise shown that it was not necessary that the roofing should actually touch the wire. If plaintiff, in turning the 7-foot piece of roofing, had brought it within 1⅜ inches of the wire, during calm weather, and the wind had blown the wire 1 inch eastward, the contact would have been made. This, we think, is what happened.

A Mr. Watson, put on the stand by defendant, testified that just prior to the accident, maybe a minute or seconds, he looked in the direction of the gin and saw plaintiff had a piece of roofing in his hand, high up over his head; that he seemed to be struggling with it, but got control of it. Watson turned his eyes away, and immediately some one exclaimed, "My God, look yonder!" He turned and saw plaintiff rolling down from the top of the house.

The negro helper who was on the shed testified that when plaintiff attempted to turn the piece of roofing it came within 4 inches of the wire and the wire just drew the tin to it. He was also placed on the stand by defendant. He said a flame from the wire just drew the end of the piece of roofing to it. The negro helper on the ladder with plaintiff said that after he passed the roofing to plaintiff and he had remarked that he had to change

the edge by turning it, he looked out toward the town and the only thing he saw was a big blue blaze come by his head. He did not see plaintiff attempt to change ends with the roofing. There were no other eyewitnesses.

Defendant's experts found the sag in the wire a distance of 30 feet from the north pole, which would be directly opposite where plaintiff was on the roof, to be 12 inches, and in the middle of the span between the north and south pole, it was much greater. Plaintiff showed by actual test that the wire could be pulled into the roof of the gin house on the north side by placing across the wire a strand of No. 40 cotton sewing thread, taking the two ends in the fingers and pulling the wire to the building. The pressure necessary to break this thread that was used is from 5 to 6 pounds. Whether that is too much sag to be in the wire, the record fails to disclose, but with the wire placed within 16 inches of this metal roof it was too much. The National Safety Code, prescribed by the Bureau of Standards of the United States government, requires that a high power transmission line should have a vertical and horizontal clearance of buildings of any kind of not less than 8 feet. This line of defendants should have been 8 feet higher than the ridge of the gin house and 8 feet west of it.

When they strung this wire, carrying 13,800 volts of electricity, only 16 inches west of the gin house and 2 feet below the ridge of the roof, they were guilty of negligence, and to make the negligence more culpable they failed to insulate the wire. If the defendant saw fit to violate the National Code as it did, it should have, by all means, insulated the wire perfectly, which it is shown could have been done by using lead insulation on the span between the north and south poles nearest the gin. Defendant should have foreseen the natural and probable consequences of its negligent construction of a high power line, uninsulated, and only 16 inches west of the gin house roof; that from time to time repairs to the wall and roof of this building would have to be made, should have been obvious to defendant, and in order to repair either it should have known that workmen would have to be in close proximity to this wire to touch which or come in contact with meant great bodily injury or death.

There was further great danger in this wire setting the gin house afire in time of a storm, or in a piece of metal roofing being blown loose and one end contacting the wire, thereby carrying the current to the gin house. The wire so constructed was a source of great danger at all times to those employed about the gin and others whose business called for them to be there. In case of fire, it would have been impossible to put a ladder on the west side of the gin so any one could climb it, without coming in contact with the high voltage wire. The negligence of defendant in this respect was most culpable and showed a total disregard for the rights of others who might be in or around the gin house. We might add that, since the accident, the insurer of this gin house has demanded that the wire be removed and defendant has agreed to do so. Potts v. Shreveport Belt R. Co., 110 La. 1, 34 So. 103, 98 Am. St. Rep. 452; Clements v. Electric Company, 44 La. Ann. 692, 11 So. 51, 16 L. R. A. 43, 32 Am. St. Rep. 348.

In Giraudi v. Electric Improvement Company, 107 Cal. 120, 40 P. 108, 109, 28 L. R. A. 596, 48 Am. St. Rep. 114, the court said: "Defendant was using a dangerous force, and one not generally understood. It was required to use very great care to prevent injury to person or property. It would have been comparatively inexpensive to raise the wires so high above the roof that those having occasion to go there would not come in contact with them. Not to do so was sufficient proof of negligence to justify the verdict." Also see Card v. Wenatchee Valley Gas & Electric Company, 77 Wash. 564, 137 P. 1047.

The case of Asher v. City of Independence, 177 Mo. App. 1, 163 S. W. 574, held a city was negligent in stringing its highly charged wires along an alley within 8 or 10 inches of a building.

In Teachout v. Grand Rapides G. H. & M. Railway Company, 179 Mich. 388, 146 N. W. 241, the court held, where defendant railroad company strung three high tension uninsulated wires for the operation of an electric railroad, but 15 to 18 inches above certain telephone wires which had been erected for many years, so that a telephone lineman, in repairing the telephone wires, might easily, and did actually, come in contact therewith, and sustain fatal injuries, that the facts were sufficient to sustain a finding of negligence on the part of the owners and users of the wires. Day v. Consolidated Light, Power & Ice Company, 136 Mo. App. 274, 117 S. W. 81; Williams v. City of Fulton, 177 Mo. App. 177, 164 S. W. 247.

"The exercise of a sufficient degree of care requires a careful and proper insulation of all wires and appliances in places where there is a likelihood or reasonable probability of human contact therewith, and the exercise of due care to make and keep insulation perfect at places where people have a right to

go on business or pleasure." 20 Corpus Juris, § 42, p. 355.

■ Having found that defendant was guilty of negligence which was a proximate cause of the accident, it follows that it is liable to plaintiff for all damages he has suffered on account of said accident, unless he was guilty of contributory negligence that was likewise a proximate cause of the accident.

Defendant relies, apparently with full confidence, on the following cases as governing in the case at bar: Borell v. Cumberland Telephone & Telegraph Company, 133 La. 630, 63 So. 247, L. R. A. 1916D, 1064; Bujol et ux. v. Gulf States Utilities Company (La. App.) 147 So. 545; Boudreaux v. Louisiana Power & Light Company, 16 La. App. 664, 135 So. 90; Bouchon v. New Orleans Ry. & Light Company, 154 La. 397, 97 So. 587.

In the Borell Case the court held that defendant was free of any negligence and that the accident was caused solely by the negligence of plaintiff in violating instructions and attempting to perform a duty he had been ordered not to perform. Plaintiff in this case saw the hot wires, realized they were hot, and was an experienced telephone lineman, and therefore knew the danger of hot wires; nevertheless, contrary to instructions and with the knowledge he possessed of the danger attached to his act, he deliberately took hold of a hot wire and was injured. This case is easily distinguished from the case at bar by a mere recital of the facts.

In the Bujol Case the accident occurred by plaintiff bringing in contact with defendant's wire a piece of pipe 22 feet long. The wire was 20 feet above the ground; the place of accident was in an abandoned rice field where, as the court held, it was not reasonable to expect people to come in contact with the wire. The court, in fact, found that defendant was guilty of no negligence. After so finding, the court held that if it is assumed that defendant was negligent, plaintiff could not recover for the reason his negligence contributed to the accident. The facts found by the court were that plaintiff was performing his duty at a place where he had been instructed by his superior not to perform it. He had been warned several times during the day by his superior not to stand the pipe on end, except when out in the street away from the wires. He disobeyed the positive instructions given him by his superior. His disobedience to instructions, his heedlessness, and total lack of care or caution were the proximate cause of the accident. The facts of this case distinguish it from the case at bar.

In Boudreaux v. Louisiana Power & Light Company, 16 La. App. 664, 135 So. 90, the court found that the wires of defendant company were properly constructed, in accordance with the United States Bureau of Standards, and there was no negligence on the part of defendant. The accident occurred on the highway outside of any incorporated town or city, and was caused by negligently bringing a crane, 36 feet long, which was designed to operate a clam shell bucket, in contact with defendant's wire. The crane was mounted on a truck, the bottom of which was 4 feet above the ground, causing the crane when erect to be 40 feet high. The wire was 30 feet above the ground. In negligently bringing the crane in contact with the wire, the court held the crew of the crane to be entirely at fault. It found the defendant free of any negligence. Therefore, the plea of contributory negligence did not enter the case. The case can have no bearing on the one presently before us.

In Bouchon v. New Orleans Railway & Light Company, 154 La. 397, 97 So. 587, the court stated the facts as follows: "Bouchon was electrocuted by touching a wire of defendant company. He was a journeyman painter, employed by a firm of contractors, styled Steve Lewis & Son, and was arranging a swinging scaffold, preparing to paint the side of a building on Derbigny street, in New Orleans. He was standing on the metal roof of an overhead passageway that connected the second floor of the building with the second floor of a building on the other side of the street. Two other workmen were handling the scaffold, which was an ordinary ladder with a plank on it, and Bouchon was directing their movements. The electric light wire was stretched over or across the roof of the passageway, about four feet above it, and about eight feet from the building. Bouchon was pulling on a rope, backing away from the building, when he turned and, perhaps stumbling, fell upon the wire."

And in passing on the case, said:

"We do not know whether the verdict of the jury, rejecting the plaintiff's demand, was based upon the proposition of law stated in the judge's charge, or upon there having been no negligence on the part of the defendant, or upon there having been contributory negligence on the part of Bouchon. All of those defenses were submitted to the jury, and we deem it sufficient to say that one of them, the plea of contributory negligence, if the defendant was guilty of negligence, is sustained by the evidence. If, for that reason, the action for damages cannot prevail, why worry now

over the question as to who had the right of action?

"Bouchon had had eight years of experience at painting houses. He knew that electric light wires were dangerous. And he knew that the wire was there. A few minutes before the accident, a man in the third story of the building across the street called out to him and warned him of the danger of the wire, and he voiced his indifference with the eloquent answer, 'Damn the wire.' · There is no dispute that, with any care or prudence at all, he could have avoided the accident. No reason could be given for rejecting the doctrine of contributory negligence in this case.

"The judgment rejecting appellant's demand is therefore affirmed at her cost."

The action and statement of Bouchon showed an utter disregard of the danger he knew of and was warned of immediately preceding his death. The use of common sense, even the slightest ordinary care, on the part of Bouchon would have prevented the accident. We fail to see the application of this case to the facts of the case before us.

When the defendant pleaded contributory negligence on the part of plaintiff, it was incumbent upon defendant to prove it. In this we think it has failed. All of the testimony of the witnesses who saw the accident and who saw plaintiff just a few seconds before the accident is to the effect that he was using due care and caution to avoid coming in contact with the wire. The only way we could come to a conclusion that plaintiff was negligent in allowing the piece of metal roofing to be contacted by the hot wire would be for us to reject the sworn testimony of plaintiff and the other witnesses as to his actions at the time, and by inference alone find that he negligently turned the piece of roofing into the wire. We would not be justified by law in so holding.

Plaintiff testified that he knew the danger of coming in contact with said wire and used every precaution to keep him from so doing. He is corroborated in this fact by Mr. Watson and his negro helper, who swear that when he attempted to turn the piece of roofing, he held it high above his head, which would keep the piece from coming in contact with the wire. There could be no other reason for holding it high above his head. Whether the wind took hold of the piece of roofing or not, we do not know. It is most likely that it did, from the testimony of Mr. Watson who says just prior to the accident plaintiff had the metal roofing high above his head and seemed to be struggling with it. If the wind did blow the metal in too close proximity to the wire, it was not negligence on the part of plaintiff. If, in turning said metal roofing, the end of it came within 1⅜ inches of the wire, and the sudden gust of wind blew the wire toward the gin house for a distance of 1 inch, thereby causing the contact, we do not see the negligence of plaintiff, for there was no danger in bringing the tin within 1⅜ inches of the wire, without the intervening wind.

We find that plaintiff was using care in attempting to avoid contact with the wire, and if while using care the wind caused the metal to come too close to the wire, or if plaintiff's hands slipped, or if he lost control of the roofing, or for any other reason which he could not prevent, and it came too close to the wire, plaintiff would not be guilty of contributory negligence. Under the facts in this case, any of these things could have happened. It is certain that plaintiff did not voluntarily bring the metal roofing in contact with the wire, and we think it was not brought in contact with the wire through any heedlessness or negligence of plaintiff; and certainly defendants have failed utterly to establish any negligence or voluntary heedless act of plaintiff which would bar him from recovery.

Plaintiff was at a place he had the lawful right to be. We think it true that he knew, to some extent, the danger of the uninsulated wire. The fact that he was performing his duties near to this dangerous wire was not contributory negligence. Potts v. Shreveport Belt Railway Company, supra.

In Teachout v. Grand Rapides G. H. & M. Ry. Company, 179 Mich. 388, 146 N. W. 241, 245, the court said the following, quoting from Louisiana decisions:

"Defendants could hardly contend that because of their conduct the telephone company must abandon its pole, and, if it was not to be abandoned, it must be held that its wires must receive attention, making it necessary for its employees to go upon the cross-arms. In Potts v. Railway Company, 119 La. 1, 34 So. 103, 98 Am. St. Rep. 452, it is said:

" 'The fact that he knew there was, at that point, leakage from the trolley wire to the span wire, and yet continued working there, was not of itself negligence barring recovery. Beach on Contributory Negligence (2d Ed.) pp. 44 and 50. He could still work there notwithstanding knowledge of the hot span wire,

and would not be chargeable with negligence, unless he failed to take due precaution and exercise due care to shield himself from harm. This is not a case of a master furnishing defective appliances to do his work, and which the servant, knowing the defect and danger, proceeded notwithstanding to do the work, thus assuming the risk. Potts was not the servant of the car company, and it was the latter's span wire that did the mischief.

"'In Clements v. Louisiana Electric Light Company, 44 La. Ann. 692, 11 So. 51, 16 L. R. A. 43, 32 Am. St. Rep. 348, this court held that, when a person is employed in the presence of a known danger, to constitute contributory negligence, it must be shown that he voluntarily and unnecessarily exposed himself to the danger. It is not contributory negligence to engage in a dangerous occupation. Such was the ruling of this court in Myhan v. Electric Light & Power Company, 41 La. Ann. [964] 969, 6 So. 799, 7 L. R. A. 172, 17 Am. St. Rep. 436. See, also, Beach on Contributory Negligence, 370; Wood, 763. It did not appear to the satisfaction of the jury that Potts had unnecessarily exposed himself to the existing danger in executing the work he was called on by his employers, the telephone company, to do. It did not appear to them that he had failed to take due precaution to shield himself from danger. In this we are not prepared to say the jury erred.' Balderson v. Telephone Company, 173 Mich. 412, 139 N. W. 7."

The case further held that where there are no eyewitnesses to any acts of negligence on the part of plaintiff, it is presumed that he acted with ordinary care, in the following language:

"In Adams v. Iron Cliffs Company, 78 Mich. 271, 44 N. W. 270, 18 Am. St. Rep. 441, Justice Morse, in speaking for the court, said:

"'This brings up squarely the question of contributory negligence in a case where there is no eyewitness of the accident. In such a case, while the rule is not relaxed that the plaintiff must show that his intestate was without fault, yet the presumption, in the absence of any evidence to the contrary, obtains that the deceased, used ordinary care and caution in attempting the crossing, and such presumption is sufficient under the rule to permit the plaintiff to recover upon showing negligence in the defendant. McWilliams v. Mills Company, 31 Mich. 274; Mynning v. Railroad Company, 59 Mich. 257, 26 N. W. 514; Id., 64 Mich. [93] 102, 31 N. W. 147, 8 Am. St. Rep. 804; Id., 67 Mich. [677] 680, 35 N. W. 811; Kwiotkowski v. Ry. Company, 70 Mich. 549; 38 N. W. 463; Railway Company v. Clark, 108 Ill. 113; Teipel v. Hilsendegen, 44 Mich. [461] 462, 7 N. W. 82.' Van Doorn v. Heap, 160 Mich. 199, 125 N. W. 11; Richardson v. Railway Company [176 Mich. 160] 142 N. W. 369.

"'The reason for this rule of law is that life is dear to the normal person, and that he will not willingly do the thing which will extinguish it, but, on the contrary, will exercise due care to preserve it.'"

■ If we should presume that plaintiff momentarily forgot the dangerous wire, which we would not be justified under the evidence in doing, there are many decisions of other jurisdictions which hold that momentary forgetfulness of the danger close at hand is not of itself sufficient to constitute contributory negligence, and while our Supreme Court did not rest its decision on that ground in the case of Whitworth v. Shreveport Belt Railway Company, 112 La. 363, 36 So. 414, 65 L. R. A. 129, an analysis of the case shows that is what was held, for, under no circumstances would Whitworth have taken hold of the hot wire which had a few seconds before killed his companion, Potts, if he had thought for a second. In his desire to render assistance to his stricken fellow worker, he momentarily forgot the danger of grasping the very wire that had killed Potts. In doing so, he went to his death. See Giraudi v. Electric Improvement Company, supra; also Dorsey v. Phillips Company, 42 Wis. 583, and McQuillan v. Seattle, 10 Wash. 464, 38 P. 1119, 45 Am. St. Rep. 799.

The reason for this rule is that one performing the duties he is employed to perform, and while busily engaged in them, cannot be expected to keep in mind every second of the time the exact location of dangerous agencies placed nearby by others.

■ We are convinced that the sole proximate cause of the accident which resulted in injury to plaintiff was the negligence of the defendant Louisiana Power & Light Company, and it is liable in damages to the amount suffered by plaintiff.

■ The Continental Casualty Company, its insurer, is liable in solido with the Power & Light Company to the amount of insurance issued by it to cover injury to one person.

■ When the current of electricity struck plaintiff, he was shocked into unconscious-

ness and rolled down the roof. The negro helper below him caught his body and, with help, lowered him to the shed roof, where artificial respiration was resorted to until life was discovered in his body. He was then taken by ambulance to the Mosely Clinic in Monroe, La., where he remained under constant care of nurses and physicians for a period of more than fifty days. It was necessary to amputate his left arm below the elbow. The right hand and arm were so badly burned that the fingers and thumb of the right hand have become permanently drawn against the palm, in a claw like fashion. The right hand is of no use to him. He received many other burns and a severe burn on his left hip which continues to bother him. He suffered most intense pain and is totally and permanently disabled to perform any kind of work. He is unable to dress or undress himself and has to be waited on for his every want. He was at the time of the accident earning $3.50 per day. He is sixty-eight years of age, with a life expectancy of about ten years. His hospital, doctors', and nurses' bill was $927.50, which amount he is entitled to recover. He is entitled to $2,500 for pain and suffering, and to $5,000 for permanent injuries, which carry with it loss of earning power, or a total of $8,425.50.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is reversed and there is now judgment in favor of plaintiff, G. P. Layne, and against the defendant Louisiana Power & Light Company, and the Continental Casualty Company, in solido, in the sum of $5,000; and further judgment against the Louisiana Power & Light Company in the sum of $3,425.50.

It is further ordered, adjudged, and decreed that the Maryland Casualty Company and Mangham Gin Company be subrogated to the rights of the plaintiff, G. P. Layne, in and to the judgment in his favor against the defendants to the amount of the judgment rendered in favor of G. P. Layne against them in suit No. 8033 on the docket of the Fifth judicial district court in and for Richland parish, La., on September 29, 1933, wherein plaintiff herein was awarded judgment for the amount of $13.65 per week for a period of 400 weeks; and the further sum of $250 for medical fees.

It is further ordered and decreed that defendants pay all costs of this suit.