

Warren Hunt, of Rayville, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

HAMITER, Judge.

Tom Webb experienced death through electrocution on May 25, 1938, when an iron pipe which he was handling came in contact with an electricity distributing line owned and maintained by defendant, Louisiana Power & Light Company; and his widow, Gaddie Webb, in her individual capacity and as natural tutrix for her minor children, instituted this ex delicto action seeking damages occasioned by the death.

Defendant's exceptions of no cause and no right of action directed to the allegations of the petition were overruled.

The trial of the case, in which there was adduced evidence respecting the alleged negligence of both defendant and the decedent, resulted in judgment rejecting plaintiff's demands and dismissing her suit. This appeal followed.

Little controversy exists between the litigants regarding the facts of the case.

Tom Webb was employed on the Bob Rhymes plantation in Richland Parish, Louisiana. He and his family occupied a house on such plantation that faced toward the south, in front of which coursed a gravel road. Separating the road from the front yard of the house was a picket fence.

## WEBB v. LOUISIANA POWER & LIGHT CO.

### No. 6175.

Court of Appeal of Louisiana. Second Circuit.

Nov. 29, 1940.

Above the yard, paralleling the fence and road, existed defendant's transmission line. This consisted of three uninsulated wires approximately 2½ feet apart, charged with 13,000 volts of electricity. These wires rested on a cross-arm, located 24½ feet above the ground, that was affixed to a power pole standing in the northeast portion of the yard, about 4½ feet from the picket fence. Just outside the fence was a large hackberry tree, the spread of which was 41 feet in diameter. Foliage and branches of this tree extended over the yard; however, sufficient clearance was therein provided to afford a passageway for the line. The wires, where they passed through the foliage, could not be easily seen by persons standing away from the tree; but after exiting from the tree's confines they were clearly observable.

North of the electricity line, a distance of 18.75 feet from a point on the ground directly beneath the inside wire, was a water well that decedent and his family used. It consisted of a hand pump attached to a number of joints of iron pipe that were clasped end on end. From such inside wire, along the hypotenuse of the imaginary triangle, to the surface of the well was a distance of 30.9 feet.

When Tom Webb arrived home from his plantation duties about noon of the above-named day, he decided to pull the pipe from the water well. Assistance was needed, so he summoned three of his neighbors. On their arrival, the task commenced. All of the men were to resume their regular work that afternoon, and necessarily they proceeded in a hurried manner.

As counsel for plaintiff states in his brief: "The operation of pulling the pipe was carried on by the men assuming a squatting or bending position, grasping the pipe as near the ground as four men could do, and pulling upward until they had assumed a standing position. Then one man would pinch the pipe in the jaws of the monkey wrench, and the other men would reach down for a similar hold and pull the pipe upward. This operation continued until sufficient pipe had been jutted out of the ground so that a joint could be loosened, and then a second joint was loosened and the pipe disconnected."

Only two of the joints were disconnected, each of these being about 8 feet in length. The turning of the remaining pipe, which resulted by reason of a failure to have sufficient tools, prevented additional disconnections; but notwithstanding this inconvenience, the disinterring continued. When the lower end of the several connected joints reached the surface of the ground the workmen lost control of the lengthy pipe and it fell in a southerly direction across and on the live electric wires. The contact brought death to plaintiff's husband and severe burns to those assisting him. All of the workmen had previous knowledge of the existence of the line, it having been maintained there for more than eight years.

The charges of negligence made by plaintiff against defendant are summed up in the following question and statement taken from the brief of her counsel: " * * * was the construction, maintenance and operation of an uninsulated wire, sur-charged with thirteen thousand volts across the front yard of deceased, negligent? Especially is it negligence in permitting the wire to be obscured from vision by the foliage of a tree, so that a workman going about his business in one of his every day usual, human endeavors, who temporarily becomes unmindful of the presence of the wire over his front yard, and is thereby injured."

■ A clear statement of the law prevailing in this state and in most of the other states of the union, with reference to the duties required in the installing and maintenance of high voltage wires, is found in the following extract taken from Anderson v. Southern California Edison Company, 77 Cal.App. 328, 246 P. 559, 562: "From the very nature of its business, an electric company using highly charged wires owes a legal duty toward every person who, in the exercise of a lawful occupation in a place where he has a legal right to be and is liable to come in contact with the wires, to see that such wires are properly placed with reference to the safety of such persons. It is only in accord with reason and common sense that persons controlling so dangerous and subtle an agency as electricity should use a high degree of care. Either the wires must be insulated or at least placed beyond the danger line of contact with human beings. While the law does not require the wires to be insulated everywhere, where there is reason to apprehend that persons may come in contact with them in the pursuit of their calling or where they may be reasonably expected to go, they should in some manner be protected."

This doctrine was recognized in Bujol v. Gulf States Utilities Company, 147 So. 545, a decision of the Court of Appeal of the First Circuit of this state, and also in Layne v. Louisiana Power & Light Company et al., 161 So. 29, decided by this court.

Other statements embracing the announced general rule of law are as follows:

"The exercise of a sufficient degree of care requires a careful and proper insulation of all wires and appliances in places where there is a likelihood or reasonable probability of human contact therewith, and the exercise of due care to make and keep insulation perfect at places where people have a right to go on business or pleasure." 20 C.J. (verbo Electricity) § 42.

"That the duty of providing insulation should be limited to those points or places where there is reason to apprehend that persons may come in contact with the wires is only reasonable. Therefore, the law does not compel companies to insulate and adopt safeguards for their wires everywhere, but only at places where people may legitimately go for work, business, or pleasure—that is, where they may reasonably be expected to go." 18 Am.Jur. (verbo Electricity) § 97.

It was appropriately observed in McCormick v. Great Western Power Company of California, 214 Cal. 658, 8 P.2d 145, 147, 81 A.L.R. 678, that: "* * * where it reasonably may be anticipated that persons will come in contact with the deadly wire, 'the obligation of the electric company is alternative in its nature. Either the wire must be insulated, or it must be so located as to be, comparatively speaking, harmless.' "

The Bureau of Standards of the United States Department of Commerce, as is disclosed by the evidence adduced in the instant case, provides safety rules for the installation and maintenance of electrical supply and communication lines. These rules permit the employment of uninsulated wires, such as are involved herein; but require that they have a minimum vertical clearance above the ground of 15 feet where they cross over spaces or ways accessible to pedestrians only. As before shown, defendant's line affords a vertical clearance above ground of more than 24 feet, or 9 feet in excess of the stated minimum; hence there was no violation by defendant of the Federal government's safety requirements.

It appears to us that defendant fulfilled all legal duties imposed on it. Although the wires in question were not insulated, there was a compliance with the other alternative, namely, the placing of them beyond the danger line of contact with human beings. While engaged in the ordinary course of their affairs, pedestrians would experience no harm from them. Defendant could not have reasonably anticipated that decedent would withdraw from the ground connected well pipe of a length, here more than 30 feet, that would make contact with the transmission line. On the contrary, it could have reasonably expected that in the event of the pulling of the pipe from the well, a disassembling of it, joint by joint, would be the course pursued.

The fact that foliage of the large hackberry tree encompassed the wires, causing them at that point to be obstructed from view, is of no importance. The pole supporting them was visible, as were the wires before entering the foliage; and the line's existence was well known to all of the workmen.

Viewing the case in the light of the afore-discussed general rule of law, it is our opinion that there was no negligence proven against defendant in the installation and maintenance of its equipment, and that the trial judge correctly rejected the demands of plaintiff.

In aid of her action, plaintiff cites Layne v. Louisiana Power & Light Company, supra, in the opinion of which we quoted the above-recited extract taken from Corpus Juris. The two cases furnish entirely different factual situations, and by reason of this are easily distinguishable. The plaintiff therein was severely and seriously injured, while engaged in installing a corrugated iron roof on a gin house, when he came in contact with defendant's high-powered transmission line. The wire was uninsulated and was located approximately 2 feet below the comb or ridge of the gin's roof and only 16 inches from the roof's edge. We found that defendant was grossly negligent in its maintenance of the line, and in this connection said [161 So. 32]:

"* * * The National Safety Code, prescribed by the Bureau of Standards of the United States government, requires that a high power transmission line should have a vertical and horizontal clearance of buildings of any kind of not less than 8 feet. This line of defendants should have been 8

454

feet higher than the ridge of the gin house and 8 feet west of it.

"When they strung this wire, carrying 13,800 volts of electricity, only 16 inches west of the gin house and 2 feet below the ridge of the roof, they were guilty of negligence, and to make the negligence more culpable they failed to insulate the wire. If the defendant saw fit to violate the National Code as it did, it should have, by all means, insulated the wire perfectly, which it is shown could have been done by using lead insulation on the span between the north and south poles nearest the gin. Defendant should have foreseen the natural and probable consequences of its negligent construction of a high power line, uninsulated, and only 16 inches west of the gin house roof; that from time to time repairs to the wall and roof of this building would have to be made, should have been obvious to defendant, and in order to repair either it should have known that workmen would have to be in close proximity to this wire to touch which or come in contact with meant great bodily injury or death."

In view of our above-announced holding herein on the question of defendant's alleged negligence, it is unnecessary for us to pass upon either the plea of contributory negligence or the exceptions of no cause and no right of action filed by defendant.

The judgment is affirmed.