## BEARD v. SOUTHWESTERN GAS & ELECTRIC CO. et al.

### Civ. No. 2559.

United States District Court
W. D. Louisiana.

April 29, 1949.

Wellborn Jack and Ashley J. Gold, both of Shreveport, La., for plaintiff.

Wilkinson, Lewis & Wilkinson, Jno. M. Madison and Cook, Clark & Egan, all of Shreveport, La., for defendants.

DAWKINS, Chief Judge.

Complainant, as the widow of Luster R. Beard and tutrix of the minor, Samuel F. Beard, sued the defendants in tort, Southwestern Gas & Electric Co. and United States Casualty Co., for the alleged negligent death of the husband and father. She alleges that Southwestern, who prior to 1941, owned a certain building at 100 to 110 Edwards Street in the city of Shreveport, and at the time of her husband's death, still used and occupied a part thereof, also operates a power and light plant in the said city. Complainant further charges as follows:

"That after said building was constructed the Southwestern Gas & Electric Company put up and maintained about 15 high voltage (tension) wires that ran down an alley by the side of said building and said wires were even, at all times mentioned herein, with the roof of the said building and the closest wire to the left corner of the top of said building when you are facing said building from the front of said building, was about 1½ feet from said corner and the rest of said wires were about a foot apart extending the width of the alley and beginning about one foot from the wire closest to the corner of the top of said building.

"That for many years and at all times mentioned herein and on March 29, 1948, the insulation was off of all said wires creating a hazard to any who might be on the top of said building or work thereon, all of which was well known to defendant, Southwestern Gas & Electric Company for many years prior to and on March 29, 1948.

"That in the year 1941, Robert B. Williamson and/or Williamson Sales Company purchased said building from Southwestern Gas & Electric Company and the said Southwestern Gas & Electric Company knew that the said Robert B. Williamson and/or Williamson Sales Company intended to improve said building and knew that in order to improve it, it would be necessary that workmen work inside and outside of said building and on top of said building and in close proximity to said wires.

"That about January 13, 1948, Robert B. Williamson and/or Williamson Sales Company who had employed R. A. Ferguson, a contractor and builder, to do over and renovate said building inside and out, had the work started on said building.

"That from January 13, 1948 until March 29, 1948, the defendant, Southwestern Gas & Electric Company had full knowledge that said construction was being done on the inside and outside of said building and that it would be necessary that workmen work in close proximity to the aforesaid described wires and that between the times of January 13, 1948 and March 29, 1948, the defendant, Southwestern Gas & Electric Company used a part of said building as a warehouse and the employees, agents, and officers of said defendant were daily in and out of said building and saw with their own eyes that said construction work was going on and saw that all of said wires no longer had insulation on them and saw workmen working on top of said building and on scaffolds on said building and knew of the hazard created by said wires.

"That the said R. A. Ferguson also knew of the hazard and dangerous situation created for workmen by the said wires because of being uninsulated and in close proximity to the edge of said top of said building and especially the front corner.

"That Gorton Roofing & Metal Works was doing the metal works on said building and decedent, Luster Roy Beard, an employee of said metal works was doing work on said building and while doing work on said building lost his life on March 29, 1948 in the following set-out manner.

"About 3:00 o'clock P.M. March 29, 1948, Luster Roy Beard, Allen Fletcher, and Edward Jarret, all employees of Gorton Sheet & Metal Works, were placing aluminum facial or stripping around the top edges of said building.

"That all three of the said workers knew that said wires were high tension wires so they all three were using the greatest of care.

"That said three employees using great care and skill had placed a sheet of aluminum about ten feet long on the side of said building at the top and at the corner near the above and foregoing mentioned wires and petitioner alleges upon belief and information that after said sheet of aluminum had been nailed on it was discovered that one of the edges had to be turned so it was necessary that the sheet of aluminum be taken loose and the edge turned.

"Petitioner alleges that although Luster Roy Beard was using the greatest of care in unloosening said sheet of aluminum it came into contact with one of the high tension wires and petitioner alleges upon belief that a gust of wind blew one of the wires against the aluminum sheet or blew the aluminum sheet against one of the wires or in some manner the aluminum sheet slipped or was lost control of by Luster Roy Beard and came in contact with one of the wires.

"Petitioner shows that Luster Roy Beard was a very careful and prudent man and experienced in this type of work and was using great caution and care at the time the sheet of aluminum came in contact with said wire and was not negligent in any manner but that on the contrary the Southwestern Gas & Electric Company was negligent in placing said wires too near the roof and in leaving them in an uninsulated condition.

"That when said sheet of aluminum touched one of the said wires, the said Luster Roy Beard was electrocuted and almost instantly killed.

"That Southwestern Gas & Electric Company was negligent in placing said wires and maintaining them so close to the edge of the corner of the building where Luster Roy Beard was working, to-wit the closest wire being about one and one-half (1½) feet from where he was removing the aluminum sheet, the next wire about a foot from that one, and each of the others about a foot from each other on across over the alley; the closest eight wires all being within eight feet of the corner of said building where the metal was being removed.

"That the strip of aluminum came in contact with one of the first three wires but petitioner is unable to allege the exact wire that it came in contact with.

"Petitioner alleges that all of the wires were high voltage wires and each carried in excess of 8,700 volts of electricity and that each wire carried a sufficient voltage to kill a human being if contact was made.

"That section 23(234) C, of the National Bureau of Standards Hand Book H 32 promulgated by the U. S. Department of Commerce, National Bureau of Standards, styled 'Safety rules for the installation and maintenance of electric supply and communication lines' provides that such wires should not be closer than eight feet from any building, meaning that there should be a horizontal clearance of eight feet.

"Further that the said Southwestern Gas & Electric Company by placing and maintaining their wires as alleged and without insulation violated the safety rules of Hand Book 31, 33, and 34 of the National Bureau of Standards of the U. S. Department of Commerce.

"That the proximate cause of the death of Luster Roy Beard was the placing of the uninsulated wires and maintaining of the uninsulated wires so close to the edge of the top of the building all as alleged above.

"That the Southwestern Gas & Electric Company having full knowledge of the work being done on said building was negligent in not removing said wires or cutting off the current.

"That R. A. Ferguson knew of the condition of the wires and their proximity to the corner of the building and was negligent in not providing a safe place for Luster Roy Beard to work, and was negligent in not asking the Southwestern Gas & Electric Company to move the wires or cut off the current.

"That at the time of the accident in which Luster Roy Beard was electrocuted and killed, there was a policy of public liability insurance in full force and effect, issued by defendant, United States Casualty Company in favor of R. A. Ferguson, protecting and insuring him from liability for injury and death to persons caused through the negligence of him or acts on his part which under the law would make him legally liable.

"That under the Louisiana law, complainant has a direct action against defendant insurance company, United States Casualty Company, and complainant elects to proceed directly against said United States Casualty Company as a defendant herein and does not make R. A. Ferguson a defendant herein."

Defendants have moved to dismiss on the ground that the complaint discloses no grounds for relief.

### Southwestern's Motion

In its brief, this defendant states:

"The Motion to Dismiss is based on the proposition that plaintiff's complaint affirmatively shows that the decedent was guilty of contributory negligence as a matter of law, and irrespective of any negligence on the part of defendant, plaintiff cannot recover because of the decedent's contributory negligence. This is affirmatively alleged in Article 20 of the complaint, as follows:

"'That all three of the said workers (one of whom was the decedent) knew that said wires were high tension wires so they all three were using the greatest of care.'

"There is no allegation in the complaint that the defendant had ever been asked to deenergize the lines in question, nor that this defendant had ever been requested to install any specific protective devices that might further insure the decedent's safety."

Without reviewing in detail the jurisprudence it is believed the following justify denial of the motion at this time: Layne v. Louisiana Power & Light Co., La.App., 161 So. 29; Clements v. Louisiana Electric Light Co., 44 La.Ann. 692, 11 So. 51, 16 L.R.A. 43, 32 Am.St.Rep. 348.

### Casualty Company's Motion.

Plaintiff has made the Casualty Company a party defendant, without joining its insured, R. A. Ferguson, as she was permitted to do under Act No. 55 of 1930, and of course, it stands in his shoes as to liability. As quoted above, there is nothing in the complaint to show that the employer of deceased was a sub-contractor under Ferguson, whom the owner "had

employed * * * to do over and renovate said building inside and out * *", the complaint charging merely that "Gorton Roofing and Metal Works was doing the metal work on said building and decedent * * *, an employee of said metal works was doing work on said building, and while doing work on said building, lost his life * * *". No contractual relation, within the meaning of the State Compensation Law, Act No. 20 of 1914, as amended, having been alleged, and the petition otherwise charging Ferguson with no duty, other than legal conclusions, drawn from the facts above quoted, with respect to the wires, it is my view that no ground for relief is shown, and the motion should be sustained.

Proper decree should be presented.