SARTAIN, Judge.
The above entitled cause which bears No. 10,435 on our docket was consolidated with Suit No. 10,436, entitled, Evie Lee Creel Dyson, Individually and as Adminis-tratrix and Natural Tutrix of the Minors, Fred Dyson, Joseph Dyson, Anthony Dyson, Neva Lee Dyson and Norma Gayle Dyson v. John D. Belcher, Jr., Agri-Trad-ing Corporation, Inc., Gulf Modular Corporation, National Homes Corporation, Wayne Engerran, Fidelity & Casualty Co. of New York, and Washington-St. Tammany Electric Cooperative, Inc. These actions were brought by the surviving widow, major and minor children of Robert C. Dyson, Sr. (decedent) who was fatally injured as a result of accidental electrocution on February 25, 1972. We shall assign our reasons for judgment in Suit No. 10,435 and for the same reasons enter separate judgment in Suit No. 10,436. 331 So.2d 549.
On the day of the accident decedent was employed by John D. Belcher, Jr. (Belch-er). Belcher, an independent contractor, was erecting a prefabricated home for Gulf Modular Corporation (Gulf) on a building site owned by Agri-Trading Corporation (Agri-Trading). Gulf had purchased the component parts of the home from National Homes (National), a Texas corporation engaged in the business of manufacturing various types of modular housing units.
Defendant O. E. Waters (Waters) was employed by National as a truck driver and crane operator.
Plaintiff sued each of the above named parties together with Washington-St. Tammany Electrical Cooperative, Inc. (Electrical Cooperative); Wayne Engerran[1], an employee of Gulf; and Fidelity & Casualty Co. of New York, the liability insurer of Gulf.
Prior to trial on the merits Belcher and his liability insurer were released on their joint motion for summary judgment on the ground that plaintiffs’ exclusive remedy against them was under workmen’s compensation. A similar motion filed by Gulf on the ground that it was the statutory employer of decedent (L.R.S. 23:1061) was referred to the merits.
Numerous reconventional and third party demands were filed by several of the defendants. It is not necessary that we particularize these incidental demands here.
The trial judge, with written reasons assigned, held that the accident was occasioned by the joint negligence of Waters and Belcher and granted judgment in favor of each of the plaintiffs against Waters and his employer, National. He further found that the decedent was not proved guilty of contributory negligence. Judgment was rendered awarding each of the children who were minors at the time of the accident the sum of $7,500.00, each major child was awarded the sum of $5,000.00, and the surviving widow was *545 awarded the sum of $15,000.00. The amount of $1,302.46 was allowed for special damages. The district judge also ruled on Gulf’s motion for summary judgment and held that Gulf was the statutory employer of the decedent and the former’s liability is limited to benefits available under workmen’s compensation. It is from this judgment that Waters and National have appealed. Plaintiffs have answered the appeal and have reasserted their allegations of negligence as originally charged against each of the above named defendants and seek an increase in the amount awarded to each of them respectively.
Waters and National urge in their appeal that the trial judge erred in finding Waters guilty of negligence and, in the alternative, reassert their plea of contributory negligence on the part of the decedent. The remaining defendants ask for affirmation of the trial judge’s decision exonerating them from liability. Additionally, Waters and National strenuously argue that the awards made to plaintiffs are excessive under the circumstances.
Our review of the record satisfies us that the plaintiffs have failed to prove any negligence on the part of Wayne Enger-ran, Agri-Trading Corporation, or Washington-St. Tammany Electrical Cooperative, Inc. Therefore, judgment in favor of these defendants is affirmed.
Pretermitting for the moment the question of Water’s negligence, we turn to the plea of contributory negligence on the part of the decedent. The trial judge in his reasons for judgment, in pertinent part, stated:
“Chaney v. Brupbacher, 242 So.2d 627, (La.App. 4th Cir. 1970) is relied on heavily by the plaintiff. There is one distinguishing feature in the Chaney case in that the electrocuted employee’s widow brought suit against the officers of his corporate employer. In this case there can be no argument that Dyson was the employee of Waters. However, on page 632 in Chaney the court stated as follows:
“ ‘The test for negligence is reasonableness. While it may be true that the reasonable man would wish to avoid the known risk here, an employee is not entirely free to do so. He cannot simply decline to do the work, because he would then subject himself to loss of his job, his means of support for self and family. It would not have helped Chaney to point out the danger to Owens, because Owens already knew it. Nor could Chaney tell Owens how to run the job. It, cannot be fairly said that Chaney elected to work under the dangerous conditions (the danger not being an intrinsic feature of Chaney’s work). Thus as we see the question, it is whether the reasonable laborer (with a wife and three children to feed, clothe and house) would quit his job or expose himself to being fired, without any immediate prospect of another job, rather than work in the presence of a danger which his job did not necessitate and which he had never previously been called on to tolerate. We simply cannot answer that question affirmatively. We believe Chaney’s conduct measured by the reasonable man standard was not negligent, and the defense of contributory negligence therefore falls'.’
“In the recent case of Barnett v. Trinity Universal, 286 So.2d 770 (La.App.2d Cir. 1973) the Court of Appeal followed the earlier Supreme Court decision of Stansbury v. Mayor and Councilmen of Morgan City, 228 La. 880, 84 So.2d 445 (1955) where it stated:
“ ‘Whenever contributory negligence is pleaded it is incumbent upon the party pleading it to prove it by a preponderance of evidence.’
“In Barnett, the Court cited with approval from Lane (sic) v. Louisiana *546 Power and Light Company, 161 So. 29, at 35, as follows:
“ ‘When a person is employed in the presence of a known danger, to constitute corttributory negligence, it must be shown that he voluntarilly (sic) and unnecessarilly (sic) exposed himself to the danger and where there are no eye witnesses to any act of negligence it is presumed that the decedent acted with ordinary care.’
“Although in this case there are witnesses to the accident, none of them could testify clearly that the decedent, Dyson, did, in fact, maneuver the cable rope to the power line. It does appear from the testimony, however, that the electricity arked. (sic)
“However, a review of the facts, when viewed in the light of the above cited jurisprudence leads this Court to the conclusion that the defendants have not proved that Dyson was contributorily negligent.”
However, we note that the above language from Chaney must be prefaced with the following language which is also found in Chaney, 242 So.2d 627, 630:
“Thus, even if we were to assume that the creators of a danger-fraught situation could escape liability where an employee job-obliged to be there should by some foreseeable negligence contribute to his own injury, nevertheless the evidence here persuades us that Chaney did not himself move the cable into the wire. Rather the end of the boom—which no witness was watching at the moment and the crane operator testified he could not see because of the sun—had to have moved atop or sufficiently close to the wire to cause the contact.
“Because we are satisfied the boom moved the cable into the wire, it is not material whether defendants are correct in arguing that Chaney, on his own, decided to use the jib cable rather than the heavyload block-and-tackle cable suspended from the main boom. Use of the latter would have meant its boom end would have been further away from the wire, but there is no evidence to suggest Chaney would not have been equally electrocuted, because the jib cable would still have contacted the wire when the boom moved. The electricity which went, through the whole crane, even its base with a great flash, would equally have coursed through the heavy-load cable through Chaney. But we believe that the crane operator’s definite testimony that the jib line had been being used ought to be accepted over the inconsistent testimony of Carton, whose testimony ranged from using only the jib, to using the heavy-load only to move this particular oversize beam from the truck to the ground, to using only the heavy-load cable previous to the time that Chaney took the jib cable for this one heavy beam.
“Accordingly, the only act we could hold contributory negligence on Chaney’s part was his having worked at all in the unsafe place and under the unsafe conditions his employer supplied." (Emphasis ours)
Viewed in this context we find that Chaney is supported by the following authorities: Bouŕe v. New Orleans Public Service, Inc., 255 So.2d 776 (La.App. 4th, 1971), writs refused, 260 La. 857, 257 So.2d 432 (1972); Calton v. Louisiana Power & Light Company, 222 La. 1063, 64 So.2d 432 (1953); Allien v. Louisiana Power & Light Company, 202 So.2d 704 (La.App., 3rd, 1967), and Layne v. Louisiana Power & Light Company, 161 So. 29 (La.App. 2d, 1935).
In Boure the court concluded that it was the plaintiff’s helper who permitted the hose to come into contact with the line. Plaintiff was found free of contributory negligence even though he was legally charged with knowledge of the existence of the line because the same was apparent to anyone exercising even the most casual observation.
*547 In Calton, though decedent’s heirs were denied recovery on other grounds, the decedent therein was cleared of the charge of contributory negligence because the court found that the operator of the boom-equipped truck had permitted the boom to come into contact with an electrical line prior to the time that said decedent had attempted to remove a pin which would have permitted the lowering of the boom.
In Allien the court held for the surviving heirs of the decedent when it found that the decedent took no part in the raising of a mast which came into contact with an electrically charged line.
In Layne the court found that it was the action of the wind which caused the sheet roofing held by the decedent to come into contact with the electric line.
The above cited authorities stand for the following propositions: It is not negligence per se to work around or near electrically charged lines. An injured party will not be held to be guilty of contributory negligence when that party’s action was not a participating factor in causing the object he is holding or touching to come into contact with an electrically charged line. It follows, however, that if the injured party’s action was a participating factor in causing such contact and the party knew or should have known of the existence of the electrical line, then his action is deemed to be negligent and he is barred from recovery. With these principles in mind, we look to the facts in the instant matter.
Gulf had purchased this particular housing unit from National. It was delivered to the homesite by National in a tractor-trailer vehicle. Waters was met by Wayne Engerran, an employee of Gulf, and directed to a rural area where the house was to be erected by Belcher. When the vehicle arrived at the homesite and before it could be placed in a more desirable location next to the previously constructed slab, the trailer became mired in mud. The trailer was then uncoupled and the tractor moved to a position between the trailer and the slab. In this position the rear portion of the trailer was beneath an electrical transmission line.
The decedent and Belcher then arrived on the scene and a discussion was had between Waters and Belcher and it was mutually decided that rather than get a tractor or bulldozer to move the trailer to a more convenient spot it would be unloaded where it stood. The evidence is clear that Waters, Belcher, Engerran, and the decedent were present during the course of the discussion and that the presence of the electrical line was mentioned. Waters and Belcher testified that they thought the trailer could be satisfactorily unloaded under these conditions. Neither considered that it was a potential hazard. They were primarily concerned with the physical obstacle it presented rather than any danger resulting from its electrical characteristics.
The trailer was to be unloaded with the aid of a crane which was situated on the rear of the tractor just behind the cab. Four outriggers are attached to the tractor and these outriggers when placed in position lend stability to the tractor which acts as a base for the crane. When the boom of the crane is fully extended it reaches an elevation of some thirty-six to forty feet. Attached to the boom is a cable. At the end of the cable is a “headache ball” and beneath this weight is a bridle consisting of two lines with a hook (connector) at the end of each line. These hooks are attached to the straps on the top of each component of the prefabricated home. The components are numbered in accordance with the particular floor plan of the house.
The decedent had been employed, by Belcher for nearly five years and during this period of time they had unloaded literally dozens of these types of homes. Working as a team they would get on top of the trailer. Sometimes only one of them would attach both hooks to the ends of a partition or one would attach one end and the other would secure the remaining *548 end. When these hooks were properly attached either the decedent or Belcher would signal the crane operator to lift the load. It would then be lifted by the crane and placed in its proper position on the slab.
On the morning of the incident, the decedent was the first to climb to the top of the trailer and was followed shortly thereafter by Belcher. One small partition had been removed from the trailer and placed on the slab and Belcher and the decedent were then in the process of removing the second and much larger partition when the accident occurred. The boom had been swung back over the top of the trailer. The decedent had the bridle in his hands. As he handed Belcher either one or both hooks an electrical surge from the transmission line above traversed the cable, fatally injuring the decedent and knocking Belcher from the trailer to the ground.
The major areas of dispute are (1) whether the decedent had been informed or warned of the existence of the transmission line and its dangerous characteristics, (2) whether Waters swung the boom and its dangling cable into the transmission line, and (3) the movement of the decedent at the time of the incident, i.e., whether he pulled the cable into the line.
The decedent was present in the group prior to the unloading when the existence of the transmission line was discussed. He was on top of the trailer when the first partition was successfully removed. On this occasion the cable from the boom was about two and one-half feet from the transmission line. The record reflects that the trailer which was being unloaded was forty-four feet long, eight feet wide and twelve and one-half feet high. The electrical transmission lines were approximately eighteen feet above the ground. Thus these lines were about six to seven feet above the trailer and, as stated above, traversed the rear portion of the trailer. Further, photographs entered into evidence clearly show the location of the trailer and the existence of these lines. Each witness at the scene of the accident testified that he observed the lines and knew of their existence. Accordingly, we must conclude that decedent was either told of their existence or is legally charged with knowledge of their presence.
We are satisfied that at the time the cable came into close proximity with or touched the transmission line the boom was in a stationary position and that Waters was standing next to the controls waiting for either the decedent or Belcher to signal him that the hooks had been attached to the partition and the same was ready to be lifted.
The best evidence with respect to decedent’s position is that he was two to three feet behind Belcher and had completed the process of handing Belcher the hooks when the electrocution occurred. Reason dictates that the cable did not come into contact with the transmission line by virtue of any movement of the boom because if it had the cable would have been energized prior to the time that the decedent took hold of it.
While it is true that none of the witnesses could actually see whether the cable came into physical contact with the transmission line, the evidence permits no other conclusion but that the decedent was bringing the line to Belcher at the time of his fatal injury. If the electricity did in fact arc from the transmission line to the cable, it could not have done so for a distance in excess of one-half inch. This is the unre-butted testimony of the only expert witness to testify in this cause. His testimony is also in accord with the expert testimony in the Cation [2] and Layne cases, above, to the effect that the electrical current therein involved could not have arced a distance greater than “a fraction of an inch” in one instance and three-eighths of an inch in another, in lines carrying 13,800 to 8,000 and 8,000 volts, respectively.
*549 Under the facts and authorities cited above, we are compelled to hold that the action of the decedent in the instant matter was a participating factor in causing the cable from the boom to come in contact with the high voltage line situated above the trailer and that such action on his part constitutes negligence which bars plaintiffs’ recovery.
Having found contributory negligence on the part of the decedent it is not necessary that we address ourselves to plaintiffs’ answer asking for an increase in the amounts awarded them by the trial court.
Accordingly, for the above reasons, the judgment of the district court, insofar as the same is in favor of plaintiffs and against O. E. Waters and National Homes, is reversed and set aside and judgment is rendered herein in favor of O. E. Waters and National Homes and against the plaintiffs dismissing plaintiffs’ claim. In all other respects the judgment appealed is affirmed. Plaintiffs-appellees are cast for all costs of these proceedings.
Affirmed in part, reversed in part and rendered.

. Shown erroneously in the transcript as Wayne Orgerron.

. 56 So.2d 862, 863 (La.App.2d 1952).