BREAUX, C. J.
Plaintiff instituted this suit to recover $7,500 for personal injury received in a fall while at work for the defendant company.
At the time of the accident he was em *345 .ployed as receiving clerk. He avers that, among other duties, he was assigned to operate the elevator; that he went to the -elevator to lower it from the top floor of the building, and immediately after he stepped into it it fell to the ground, a distance he .avers of 45 feet; that it was in the fall that his back was badly sprained or wrenched; ■that his injury is permanent. He avers that the elevator fell because of the giving away ■of the cables by which it was suspended: that these cables were old and worn; that the salty drippings from the meats handled ■by the defendant company had for months been swept and washed down the elevator .shaft, and in consequence the elevator and cables were weak and unsafe; that, in ad■dition, the elevator was not properly equipped with brakes to prevent its fall in case the ■cables broke, or in case of any other accident.
The defendant sought to meet the issues presented by plaintiff by a general denial and by a special averment that, if plaintiff was hurt at all, it was through his own fault ■or carelessness, and not through any fault of its own, or of any one for whom it was responsible; that plaintiff was not within the :scope of his employment at the time; and that he should not have attempted to loosen the elevator from the place where it had become stationary because in some way pre-sumably out of order. Defendants charge in their answer that plaintiff violated the -directions of the foreman by doing the work ■which was assigned to others.
The ease was tried by jury, and from the verdict, concurred in by 10 of the number; .awarding him the sum of $2,000, the defend.ant appealed.
A motion to remand has been filed, on the ground that since the trial in the district court it has been discovered that there is material and important evidence touching the injury of which the plaintiff complains; that -defendant was unable to discover this testimony before the trial.
The witnesses, three in number, have signed affidavits made part of motion to remand, setting forth that immediately after the trial of the suit they became acquainted with plaintiff, and that he was suffering from no disability. This application to remand will be considered later in our decision.
The testimony shows the following state of facts: Plaintiff’s employment at defendant’s store began in June, 1905. In January, 1906, a negro servant called plaintiff to the third floor to lower the elevator for him. The negro was afraid or unable to move the elevator from the place where it was up to the third floor. Plaintiff went to the elevator, stepped into it, and pulled the rope. It was then that it fell the distance of about 20 feet, and not 45, as alleged by plaintiff.
Plaintiff, as his own witness, testified that the elevator sometimes came to a stop when about the third or fourth floor; that it became necessary to shake it a little to get it to start again on its usual run; that a number of times he pulled on its cables and shook it in order to start it up or down as necessary.
At this point the contention of defendant as relates to the facts is that it was shown by its witnesses that plaintiff was not specially charged with operating the elevator, and that, when the accident happened, he was not within the scope of his employment. True, defendant’s foreman swore that plaintiff had never been directed by him in any way to take charge of the elevator; but it appears that for some time no one had special charge of this elevator. Any of the employés could step into it and run it.
On the suggestion of the electrical engineer, who said that it was often out of order, because it was handled by any of the employés who chose to handle it, the foreman named three or four employés who should attend to it, and no one else, as he testified.
The foreman said that the plaintiff was not of the number. It was not shown, however, *347 that lie (plaintiff) had ever received notice that only the four persons named were to run this elevator. We infer that it sometimes occurred that he also would take charge of it.
There is also testimony of several witnesses for plaintiff, setting forth that on two or three occasions he (plaintiff) was directed by the foreman to operate this machine. This is denied by the foreman.
Taking the testimony as a whole, we do not infer from it that plaintiff was employed at the moment of the accident entirely away from the scope of his employment.
With reference to the inspection of the elevator, another issue of fact, the electrician testified that he inspected the electrical appliances. Plaintiff met this testimony by contending that the whole contrivance forming part of the elevator, including the cables, should have been inspected, and that these were not included in an inspection which included cmly the electrical appliances.
Before concluding our statement of the facts, we feel compelled to state that, if there was a way to anchor this elevator in case of accident so as to prevent a fall, the machine should have been provided with the contrivance to that end. It had automatic brakes, but they were not effective.
In addition to plaintiff’s testimony, a witness, Smith, testified that the foreman directed him to say to plaintiff, on a day when the elevator had come to a stop, to go and see what was the cause and start it running again. Other witnesses have testified pretty much to the same effect. All of this is denied by the foreman.
The superintendent of defendant company testified that he never gave instructions to plaintiff about the elevator, either to run it or not to run it.
The scope of plaintiff’s employment:
He was not away from his employment. At any rate, he was not at fault in acting as he did to start the elevator in accordance with the request made of him by one of the~ servants of the defendant. He had done-it before, and no one had said anything about" it. There is no testimony going to prove-that he was notified not to continue to run. the elevator whenever it became necessary-in going up or down the building.
It does not appear that he left his work to take up the work of another, but took up this work for a moment, as others did, whenever it became necessary.
This being settled, it becomes necessary to-decide, in so far as plaintiff is concerned,, whether he was in any way negligent in his • attempt to start the elevator on its run. It was strong enough to carry several thousand pounds. There was no reason for plaintiff to suspect that it would break down with his weight. Going into the elevator-was not an act of negligence, nor moving, about while in the elevator for starting it.
The master is expected to exercise care- and attention in matter of the inspection of an elevator, its devices, and appliances. Barrows on Negligence, p. 95.
“So in a large number of cases the question is whether or not the defect in tool or machinery which causes the accident was such as ought to have been perceived upon a reasonably careful-inspection, and the mere fact that some sort of an inspection has been made by the person whose-duty it was to make it will not be sufficient to. bar plaintiff from recovering.” Buswell, Injury-(2d Ed.) § 194.
In our case we have seen that the inspection was incomplete. The elevator was raised by cables which were connected with a. motor. The cables ran down over the drum. The motor was examined, but the cables - were not, nor the drum, as we read the testimony. The result was, as before stated, that suddenly, without the least warning,. the cables parted, and the elevator fell.
Here, in view of the fact that the fall, was due to the breaking of the cables, it occurs to us that plaintiff’s position is correct, and that it was not enough to have in— *349 speeted each month the electrical appliances of the elevator.
Another proposition suggests itself: The automatic brakes proved a failure.
Before taking up this branch of the subject, we will quote from the testimony of the electrician:
“There were brakes on the elevator. The only clanger was in passing the third floor. From that point it may run up and hit the beam where the rods are. There is an automatic brake that should stop it flush with the third floor. If the dogs on the sides operated properly, they would have a tendency to check the fall, if not stop it entirely.”
It is the duty of the master to provide reasonably safe places and structures.
It does not occur to us that these brakes were reasonably safe. Buswell, § 197.
This brings us to the next question, to-wit, the amount of the damages.
The injury was not permanent. No bones were broken. There were no external signs of violence; no discoloration of any part of the body.
Dr. Sutherland, a witness, said that plaintiff was bruised in the back and thigh. That he was injured about the hip joint and the lower portion of the spine. That there was no fracture of the bone. None the less, he was pretty badly hurt. That it was hard to say how bad he was injured. That he did not stay at the hospital long enough to enable him to learn the extent of his injury.
The testimony sets out that plaintiff was not discharged from the hospital, but left to go to the home of relatives in Ruston, La.
Another point for decision:
We have noted that defendant moved for an order remanding the case on the ground of newly discovered evidence. It has had its day in court. It is its misfortune if it did not discover the evidence in time. There must be an end to litigation. A remanding order at this time in this case would find support in none of the books.
Under the rules which govern practice, we are constrained to decline to grant this motion.
As regards the amount:
We will state here that we are decidedly of the opinion that $1,000 is consistent with damages allowed in other eases. This conclusion is arrived at after having considered other decisions, and after having considered all the facts of this ease.
The law and the evidence being with plaintiff, it is ordered, adjudged, and decreed that the judgment appealed from be amended, by reducing the amount of damages allowed from $2,000 and interest, to $1,000 and interest.
As amended the judgment is affirmed at appellee’s costs.