## MOELLER v. MORGAN'S LA. & TEX. R. R. & S. S. CO.

---

(February 27, 1928. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Damages—Par. 103, 104, 105.**
A judgment of One Thousand Dollars will be affirmed where the record shows that plaintiff, who lost Three Hundred Dollars in salary, suffered for six weeks from a slight separation of the sacro-iliac joint and was still wearing at the time of the trial nine months later a seven-inch canvas belt with steel ribs and straps under the legs.

Appeal from Civil District Court, Div. "C". Hon. E. K. Skinner, Judge.

Action by George H. Moeller against Morgan's Louisiana & Texas Railroad and Steamship Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

M. C. Scharff, of New Orleans, attorney for plaintiff, appellee.

Denegre, Leovy & Chaffe, of New Orleans, attorneys for defendant, appellant.

JONES, J. Plaintiff, a railway mail clerk, sues for damages for personal injuries sustained on March 22nd, 1925, alleging as follows:

Collision occurred between the train on which he was riding and train No. 12, both being operated by defendant; he was violently thrown to the rear of the car, suffering contusions and painful injuries to the muscles and ligaments in the region of the lumbar sacral joints; he was incapacitated until May 5th, 1925, when he returned to work, but he still suffered sometimes from his injuries.

He itemizes his damages as follows:

(A) Four Hundred and Sixteen and 18/100 ($416.18) Dollars for loss of salary; (B) Two Thousand Five Hundred ($2500.00) Dollars for pain and · suffering; Two Thousand Five Hundred ($2500.00) Dollars for future pain and suffering and for the permanent injuries and loss of salary.

Defendant admitted liability, but resisted suit on the question of amount.

The Judge a quo rendered judgment in favor of plaintiff for One Thousand ($1000.00) Dollars, from which judgment the defendant has appealed. Plaintiff has answered the appeal praying for an increase.

The sole question before us is the amount.

Plaintiff testified as follows:

Immediately after the accident he was placed under the care of Dr. O'Hara, who treated him until he returned to work, strapping his back and ordering him to take a complete rest; just prior to May 5th, 1925, he was compelled to wear a seven-inch canvas belt with steel ribs and straps under the legs and up to the day of the trial he had worn out two belts and was still wearing one; he still suffered at intervals and was unable to do any heavy work.

His testimony is corroborated by the testimony of Dr. O'Hara, who testified that he had a "very painful back in the lower end of the spine known as the sacro-iliac region" and that it was difficult for him to say just how long Mr. Moeller would suffer from the injury; that there was a possibility of a recurrence of the injuries by any slight twist or turn; that he prescribed rest for thirty days and about two days later after an open sore had healed he strengthened the joint by strapping the back with adhesive plaster.

Dr. Parham (a witness for defendant) testified that he examined plaintiff and spoke to Dr. O'Hara on March 5th, 1925, about the injuries and again on April 23rd, and that Dr. O'Hara informed him at that time that Mr. Moeller was still disabled, but that he thought he would be able to work about the first of May.

Dr. Parham also testified that on May 11th, 1925, he had an X-ray picture taken of Mr. Moeller, which showed that Moeller was suffering with a slight separation of sacro-iliac joint; he prescribed a 7-inch canvas belt; a physician has to rely on the patient's statement in such cases almost entirely; the slight separation shown by the X-ray was of very little consequence.

C. R. Field, General Claim Agent of the defendant company, testified that he first

called on Moeller at his home on March 24th, 1925, and that Moeller who was up and about the house, told him that "he was feeling pretty good, that he had a bruise on his shoulder and a few brush burns on his body and a few slight bruises, but that he would be all right in a few days and would be back to work. He said he was being treated by Dr. O'Hara, who had examined him, and hadn't found anything beyond the few bruises, and there was some injury to his back that the doctor hadn't fully diagnosed, he hadn't X-rayed it, but the way he felt, he thought he would be able to return to work in a few days' time and he expected to."

He next saw plaintiff on April 25th, 1925, at his office, and plaintiff "said that Dr. O'Hara had told him that he could return to work at any time he felt like doing so". He added that he would return to work on May 1st.

Under cross-examination the witness testified that plaintiff on this last visit appeared to be magnifying his injuries, and fully explained the basis of this opinion.

Above digest shows that plaintiff was absent from work about six and one-half weeks, from March 22nd to May 5th, that he was under Dr. O'Hara's care for about three weeks and consulted Dr. Parham as late as May 11th, after he returned to work.

Defendant's able attorney argues that the award of the trial judge is entirely too high, as the record does not bear out the statement of plaintiff that he had suffered severely and that his injuries were largely subjective and his proof too vague to support so large a judgment.

As plaintiff lost six weeks' salary amounting to Two Hundred Ninety ($290.00) Dollars and as the record shows that he had already bought two belts for Four ($4.00) Dollars, the amount actually allotted to him for his suffering is only Seven Hundred ($700.00) Dollars. This amount does not strike us as excessive under the circumstances, particularly as Dr. O'Hara says that he had a very painful back and having had a sacro-iliac sprain would make him more susceptible to pain in that region, and that he would not expect a man with such an injury to be as well as before for sixty days. The fact that defendant was still wearing the seven-inch canvas belt nine months after the accident tends to show that his injury was not greatly exaggerated.

Both doctors testify that a sacro-iliac sprain is generally painful and the treatment in this case was such as is usually applied, a plaster cast being applied only when there is a fracture.

These physicians, both widely experienced in treatment of such troubles, could have seen through plaintiff's pretenses, if he had been faking his pain.

Furthermore, we find nothing in plaintiff's conduct to justify the conclusions that he was a malingerer. Had he wished to play such a part, he would hardly have seen defendant's claim agent two days after the accident when he called at his home and he would certainly not have described his ailment with such frank detail.

Although the different surrounding circumstances and conditions in personal injury claims always make it difficult to fix the amount, it is peculiarly hard to do so where there are no objective signs of the injury.

In the case of Yarbrough vs. Swift & Co., 119 La. 344, 44 South. 121, where no bones were broken, and there was no discoloration and no extenal signs of violence, but the doctor said that plaintiff was bruised in the back and thigh and injured about the lower spine, a case

closely analogous to the present the Supreme Court affirmed the lower judge who allowed One Thousand ($1000.00) Dollars.

For above reasons the judgment is affirmed.