**PETTAWAY v. K. C. S. DRUG CO., Inc., et al.**

No. 5212.

Court of Appeal of Louisiana. Second Circuit.

April 3, 1936.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellants.

Irion & Switzer and Wm. H. Cook, all of Shreveport, for appellee.

HAMITER, Judge.

Julia Pettaway was severely injured when struck by a Chevrolet truck as she was walking from the south to the north curb of Caddo street, in the city of Shreveport, at or near its intersection with Christian street, and a short distance east of the terminus of Ford street. The truck was being driven by Harry Talmadge, while acting in the scope of his employment with the owner thereof, the K. C. S. Drug Company, Inc. It was insured by the Fidelity & Casualty Company of New York against public liability to the maximum limit of $10,000.

Ford street runs east and west. Traveling in an easterly direction, it loses its identity by becoming merged into Caddo street, which turns or curves sharply to the left and then runs in a northeasterly direction. Ford and Caddo streets constitute a continuous wide paved artery of traffic. Immediately east of the point where Ford street loses its identity, Christian street, which is unpaved, intersects and crosses Caddo street at right angles. A railroad trestle spans Ford street a short distance west of this intersection.

Subsequent to the date of the accident, the injured party was judicially declared an interdict by the district court in which this suit was filed, and William Pettaway, her son, was appointed and confirmed as curator. He brought this suit for and on behalf of his interdicted mother, in which he seeks a solidary judgment, for damages sustained, against the above-named driver, employer, and insurer. There was judgment in his favor against all defendants, in solido, for $4,000, and the parties cast have appealed. Plaintiff answered the appeal, and prayed that the award be increased to $15,000.

Appellee charges various acts of negligence on the part of the truck driver, and particularly the following:

1. Failure to maintain a proper lookout, and not having his vehicle under control.

2. Driving at an excessive rate of speed.

3. Proceeding on the left side of the street.

Defendants deny any negligence on the part of Talmadge, and, in the alternative, plead that Julia Pettaway was crossing Caddo street between intersections and was not keeping a proper lookout for approaching cars, and that she was, therefore, contributorily negligent.

As in most cases of this kind, the testimony relating to the occurrence of the collision is conflicting. The trial judge, as disclosed by his written opinion, found the pertinent facts to be as follows: The accident happened close to or at the intersection of Caddo and Christian streets, about 7 or 7:30 o'clock on the evening of February 15, 1935. The Chevrolet truck, with its headlights burning, proceeded in an easterly direction along Ford street and passed beneath the railroad trestle. As it was rounding the curve, on its left side of the street and at a rate of speed in excess of the maximum authorized by a city ordinance, the injured person was seen by the driver immediately ahead and walking about the center of the street. The truck was swerved farther to the left, and the woman began to run, continuing toward the north side. She was then struck down by the right side of the vehicle. After the accident, she was found lying prostrate near the center of Caddo street at a point approximately 41 feet beyond or in an easterly direction from the intersection of

Christian street. The truck came to a stop and was parked some little distance away.

■ Although the testimony of the various witnesses is contradictory in many details, the preponderance thereof sustains the findings which we have hereinabove recited. Furthermore, it is elementary that in cases of this nature, where the evidence. is conflicting, the findings of fact of the trial court will be given utmost weight.

■ The credibility of some of the witnesses testifying has been questioned by defendants. This is a matter which falls largely within the province of the trial judge. He had the opportunity and advantage of noticing the demeanor of the witnesses, and we are not warranted in saying that he erred in his conclusions as to their credibility.

■ The driving of the truck on the left side of the street and at an excessive rate of speed, in violation of a traffic ordinance of the city of Shreveport, constituted negligence on the part of defendant driver. Section 20 of Ordinance 207 of 1923, a copy of which ordinance is in the record, provides:

"Section 20. Rules of the road continued —pass to right. Be it further ordained, etc., That all vehicles shall keep to the right side of the center of the street, except when necessary to turn to the left in crossing the street or in passing another vehicle headed in the same direction."

In this case the truck was neither passing another vehicle, nor was it crossing the street within the intendment of that provision. Section 37 of that same law provides:

"Section 37. Speed limit—trucks, heavy vehicles. Be it further ordained, etc., That the speed limit for all motor driven buses, trucks, and other heavy vehicles shall not be greater than 12 miles per hour in the residential districts, and not greater than 10 miles per hour in the business districts, except on right-of-way streets where speed limit shall be as provided in ordinance creating same."

And there is nothing in the record to show that Caddo and Ford streets have been placed in the right of way class and provided with a different speed limit. The various estimates on the truck's speed, as given by the witnesses, range from 20 to 50 miles per hour. The driver and his passenger estimated it to be from 20 to 25 miles per hour. Mr. P. D. Miller, a member of the Shreveport police department,

testified that the driver, on the night of the accident, admitted that he was traveling between 30 and 35 miles an hour. The decisions of our state are uniform to the effect that the violation of positive traffic laws is negligence per se, and that the violator is liable for all injuries arising therefrom if such negligence was the proximate cause of the injuries. Haley v. Black (La.App.) 152 So. 805.

■ Defendant Talmadge was also negligent in that he did not have his vehicle under proper control and was not keeping the required lookout. Julia Pettaway was not seen by the driver until she was immediately ahead of the truck. The reason for this was that the lights were not focused on her until the truck had progressed a sufficient distance around the curve, and there was no street lamp to light her surroundings. It is the driver's duty to know what is in front of him for a reasonable distance. Harrison v. Shreveport Yellow Cab Co. (La.App.) 142 So. 724, 729. He had no right to assume that the thoroughfare beyond the curve was clear, and to continue without considering the safety of persons who might be there. When Talmadge found that his lights did not focus on that portion of the street on the other side of the curve, it was his duty to bring his truck under such control that it could be stopped should an emergency like the one herein involved present itself. Proceeding as he did, particularly at an excessive rate of speed and on the left side of the street, was gross negligence. Pepper v. Walsworth, 6 La.App. 610.

■ Passing to the defense of contributory negligence, defendants insist that Julia Pettaway was not crossing at the intersection. The evidence in this case regarding the place of her crossing is not conclusive. Some of the witnesses fixed the location at the intersection, while others testified that she was beyond it. Counsel emphasizes a statement of one of plaintiff's witnesses that she crossed "close" to the intersection. This witness, however, in his later testimony, said that the interdict was crossing "right at the intersection." In all events, the place of her travel was not more than 41 feet from the intersection, for she was found lying there after the accident, and for the purpose of this discussion we shall consider this the crossing point.

It is argued that a person who crosses a street other than at a regular pedestrian

crossing cannot recover if injured, unless the doctrine of the last clear chance is applicable, and, by innuendo, that the attempting of such a crossing is negligence per se. In support of this, counsel cites the cases of Fernandez v. Montz, 151 La. 299, 91 So. 742, 743, and Mequet et al. v. Algiers Manufacturing Co., Ltd., 147 La. 364, 84 So. 904, 905.

The syllabus of the Fernandez Case, which is quoted in defendants' brief, appears to support the argument of defendants' counsel. But this does not reflect the real and true holding of the court as found in the following language of the opinion: "But after the driver of a vehicle has passed the crossings, *he is not called upon to exercise the same degree of caution,* because, sidewalks being reserved exclusively for the use of pedestrians, he has no reason to expect pedestrians to use the street as a sidewalk." (Italics ours.)

It is to be seen that there the Supreme Court was merely applying the well recognized rule of law that between street or highway crossings, the same standard of care is not required of the operator of an automobile as is required at a crossing, although he must exercise reasonable care and constantly be on the lookout for the safety of others. Huddy's Automobile Law, vol. 5-6, § 15. It does not say that he is absolved of the duty to use some care, and that he may be grossly negligent in his operations. And after employing that language, the following is said:

"Of course if defendant had seen plaintiffs' little girl in time to avoid the accident, even though she was in a portion of the street not intended for pedestrians, he would be liable under the doctrine of the last clear chance, but the facts appearing in this record do not justify the application of that doctrine."

It is perfectly clear that the above-quoted statements are in no manner conditioned on each other. The last is separate and independent of the first, is a discussion of a state of facts not established by the record, and is pure dictum. Furthermore, the court, in rejecting plaintiffs' demands, based its decision on the absence of negligence of the defendant, and not on contributory negligence of the injured party.

In writing the opinion in the Mequet Case, Justice Dawkins used the following language, quoted by counsel in his brief, which would also appear, on first reading, to support his contention:

"On those portions of the highways, known to be used by such vehicles, between the points provided for the passage of pedestrians, the latter, in attempting to cross, do so in large measure at their peril, subject to the requirement that the drivers of such vehicles shall not knowingly or wantonly strike and injure them."

But a careful study of this phraseology convinces us that the court did not use the words "knowingly or wantonly" in a restrictive sense; for in no place in that language can be found a restrictive word such as "only" or "sole" to modify or qualify the word "requirement." And the words "at their peril" are qualified by the phrase "do so in large measure." Furthermore, a reading of the entire opinion reveals that such statement is dictum, and does not control the decision of that case, for therein it is specifically said that the record did not establish contributory negligence in the deceased, and plaintiffs' suit was dismissed because of lack of negligence on the part of the defendant.

Therefore, the decisions in the Fernandez and Mequet Cases are not authority for the proposition that a person who crosses a street between intersections cannot recover if injured, unless the doctrine of last clear chance is applicable. The proper rule of law seems to be that in the absence of a prohibitory statute or ordinance, a pedestrian has the right to cross a street at any point within the block, and it is not negligence as a matter of law to cross between intersections or at some point other than a regular crossing. Huddy's Encyclopedia of Automobile Law, vol. 5-6, § 97. As no such prohibitory law has been called to our attention, we think that even if Julia Pettaway crossed between intersections, that fact alone did not render her negligent.

In the case of Harrison v. Shreveport Yellow Cab Co., supra, we said:

"Defendant contends that the child was not attempting to cross the street at a point where pedestrians are supposed to cross, and that, since he was attempting to cross in the middle of the street, the taxi driver did not owe him the duty of as much care as it would had he been in the white lines marked for use by pedestrians. While this contention may be true, it does not mean that the driver should not keep a lookout for pedestrians at all times, or that he could blindly run down any one who attempts to cross the street at a point other than an intersection. It is not shown that there is a

city ordinance prohibiting the crossing of pedestrians at any place, other than the lines marked for their use at the intersection. It was the duty of the driver of the taxi to keep a proper lookout at all times; to know what was in front of him, at least for a reasonable distance in front of him."

Furthermore, we are unable to say that the injured woman, was not keeping a proper lookout for cars. The truck was proceeding on the inside of the curve at an excessive rate of speed. On being suddenly confronted with the vehicle, while she was in the middle of the street, she became frightened and quickened her steps. The accident then occurred. Even though her confusion led her directly in front of the truck, it cannot be said that such constituted negligence on her part. The sudden appearance of the vehicle created an emergency. In such a situation, the usual and regular cool judgment and demeanor of a person cannot be required or expected. Baquie v. Meraux, 11 La.App. 368, 123 So. 338.

Contributory negligence is an affirmative defense under our jurisprudence, and the burden of proving it herein was on defendants. Our conclusion is that they have not discharged this burden, and that the negligence of defendant Talmadge was the proximate cause of the accident. If he had been traveling on the right side of the street at a reasonable rate of speed, with his car under the required control and keeping a proper lookout, the collision would not have resulted.

A motion to remand has been filed herein by appellee in which he alleges that since the argument and submission of the case in this court, he has discovered that his interdicted mother has developed osteomyelitis of her leg as a direct result of the accident. It is supported by an attached letter of Dr. Paul D. Abramson. He prays that the remand be ordered so that he may offer evidence to prove such condition. This was objected to by defendants.

A novel question of law is presented by the motion. We have been cited to no case in our jurisprudence, and none has been found by us notwithstanding diligent search, in which the identical situation has arisen. There are numerous decisions announcing the principle that appellate courts may remand a cause for the taking of further evidence whenever, in their opinion, the interest of justice requires it; but this doctrine has usually been followed in cases where the evidence in the record was too uncertain and indefinite to sustain the allegations of the pleadings and permit a satisfactory pronouncement on the cause, or where a material part of the record has been lost.

In the case at bar the petition contains no allegations whatever with reference to the alleged affliction of osteomyelitis, although we appreciate the fact that such could not have been alleged on if it was unknown at the time of the filing of the petition. However, should the case be remanded and the evidence offered, no doubt objections on the ground of enlargement of the pleadings would be urged by defendants. We think that the above-mentioned rule is not applicable to this case in which the evidence in the record is ample and sufficient to permit a satisfactory decision under the existing pleadings. If this motion were granted, a precedent for unending litigation might be established. There must be an end to litigation; otherwise, the dockets of the courts would become tremendously congested. Yarbrough v. Swift & Co., 119 La. 344, 44 So. 121; Willis v. Cahn (La.App.) 164 So. 452, 455.

The Supreme Court, in Wiener v. Crystal Oil Refining Corporation, 183 La. 879, 165 So. 131, 132, said:

"The Supreme Court can consider and dispose of a case only in the condition in which it was when the judgment appealed from was rendered, and let subsequent events have such effect as the law may give them. Jefferson v. Herold, 144 La. 1064, 81 So. 714."

The motion to remand should be refused.

Considering now the matter of quantum, Julia Pettaway was a colored woman whose age, according to her son's testimony, was fifty-one years. However, one of plaintiff's witnesses, a neurologist, thought her to be around sixty years of age. In the accident, which occurred February 15, 1935, she received a compound fracture of both the tibia and fibula of the right leg, a fracture of the mandible or lower jaw, and injuries to her head resulting in a temporary mental disturbance. She was unconscious when admitted to the hospital on the night of the accident, and was in a semistupor for several weeks. Her stay in that institution lasted until March 29, 1935. The preponderance of the evidence shows that her improvement was fairly rapid, and at the time of trial on May 14, 1935, the jaw had completely healed, her mental

condition had become normal for a person of her age, race, and education, and that her leg disability would continue for approximately three months thereafter. The cast on the injured limb was to be removed on the day after the trial began. It is not shown that the injured woman had any earning capacity, and no claim is made for medical or hospital expenses.

According to the evidence before us, the accident victim no doubt experienced much pain and suffering, but no permanent injuries appear to have resulted to her. It is our opinion that the award made by the trial court is excessive to the extent of $1,000.

Accordingly, the amount awarded is reduced to $3,000, and, as thus amended, the judgment is affirmed.