286 So.2d 770 (1973)
Mrs. Anne R. BARNETT et al., Plaintiffs-Appellants,
v.
TRINITY UNIVERSAL INSURANCE COMPANY et al., Defendants-Appellees.
No. 12077.
Court of Appeal of Louisiana, Second Circuit.
May 1, 1973.
On Rehearing October 10, 1973.
Rehearing Denied November 13, 1973.
*771 Booth, Lockard, Jack, Pleasant & Lesage by Troy E. Bain, Leonard L. Lockard, Joseph R. Bethard, Shreveport, for appellants.
Bodenheimer, Jones, Klotz & Simmons by G. M. Bodenheimer, Jr., Lunn, Irion, Switzer, Johnson & Salley by Charles W. Salley, Shreveport, for appellees.
Before PRICE, HEARD and HALL, JJ.
Rehearing En Banc Denied November 13, 1973.
HALL, Judge.
This suit was instituted by the widow and children of Charles L. Barnett who died from injuries sustained when he fell down an elevator shaft in the Ward Building in Shreveport. Barnett was found at the bottom of the shaft on the morning of November 30, 1969, seriously injured, and he died later that day of these injuries. Defendants named in the suit were the owners of the building, Hallie Ward Hargrove, Alice Ward Fowler, D. R. Moreland and Cornelia R. Moreland; Safe, Inc., lessee and operator of the building; and its *772 insurer, Trinity Universal Insurance Company. Defendants filed a third party petition against Otis Elevator Company which was subsequently dismissed with prejudice on motion of defendants. Following a trial on the merits the district court sustained a plea of contributory negligence and rejected plaintiffs' demands. Plaintiffs then perfected an appeal to this court. We affirm the decision of the district court.
The following facts are established by the evidence:
1. On Sunday morning, November 30, 1969, at about 10:30 a. m., Barnett was found seriously injured at the bottom of the passenger elevator shaft in the Ward Building. Barnett died of the injuries at about 5:30 that same afternoon.
2. He was found by Fred Joanen, another tenant of the building. Joanen unlocked the front door to the lobby, started up the stairs to his office, heard a noise and noticed the elevator door was open, went on upstairs and heard a noise again as he came back down the stairs, walked over to the elevator and looked down the shaft but could not see anything because of darkness, went to his car and got his flashlight, went back to the elevator and saw Barnett at the bottom of the shaft.
3. The Ward Building is a three-story office building in downtown Shreveport. Barnett, an attorney, had been a tenant of the building for more than twenty years. He, along with several other tenants, was furnished a key to the front door so he could get in on the weekends when the building was closed to the public. He had been to his office on numerous occasions on Sundays and had used the elevator on Sundays.
4. In 1960, the building was leased by the owners, Hallie Ward Hargrove, et al, to Safe, Inc. which company operated the building under the management of Paul Shapiro, its president, from that time through the date of trial.
5. The building was equipped with two elevators installed in 1937, located side by side at the rear side of the first floor lobby. The elevator involved in this litigation was used as a passenger elevator and the other for freight. At one time there may have been an operator on duty seven days a week, but at least since 1963 there was an operator on duty from 7:30 a. m. to 6:00 p. m., six days a week, but not on Sundays.
6. The elevator was manually operated and was not designed as an automatic self-service elevator. It could be moved up and down only by use of a lever or control inside the elevator car. It could not be called from floor to floor by a button outside the elevator. It had no interlocking safety device to prevent the door from opening when the elevator car was not present. The elevator car itself had no door, but there was a door on each floor for access to the elevator. All doors had to be closed in order for the elevator to move up or down.
7. With no operator present and with the door closed, the only way to open the door to the elevator at the first floor is by use of a metal rod, called an emergency or lunar key. This key was left hanging behind a door under the stairs in the lobby across from the elevator. To open the door, the key was inserted through a hole in the door and moved to break the locking bar across the inside of the door, which then opened about six inches. The door could then be pushed completely open in which position it would stay open. The person opening the door would normally then return the key to its place under the stairs and walk back to the elevator to enter and use it.
8. An ignition key was left in the control panel inside the elevator at all times. To operate the elevator after getting into it, the key had to be turned on, the door shut, and the lever control moved up or down. There was a light inside the elevator car controlled by a switch on the control panel.
*773 9. If the elevator was taken to the second or third floors by someone wishing to visit their office or stay on that floor, the elevator necessarily remained on the upper floor until that person or someone else got into it on that floor and brought it back to the first floor. After taking the elevator to one of the upper floors, it was necessary to prop the door open at that floor because if the door shut there was no way to get it back open through any method available to the tenants.
10. Under orders from the building manager, Shapiro, the lights in the lobby and in the elevator car were regularly turned off each day at 6:00 p. m., and were off on Sundays. There is a display window at the rear end of the lobby located two or three feet from the elevator in which a light was left on at all times. Thus, the only light in the lobby on the Sunday of the accident was the light from the display window and any daylight that came in through the windows at the front of the lobby and a small window over the stairs.
11. When Barnett was found on Sunday morning, the first floor door to the elevator was wide open. The elevator car was on the third floor. The emergency key was in its usual place behind a door under the stairs.
12. Although Barnett was found about 10:30 in the morning and it was a bright, sunshiny day at that time, there is no evidence as to what time he entered the building or when the accident happened. It could have happened either before or after daylight.
13. Plaintiffs' expert witness, W. S. Poole, an electrical engineer experienced in lighting and with elevators, made light meter readings in the lobby at a later date, on a cloudy day with no artificial lights on except that in the display window. The available light at the entrance to the elevator measured two foot candles. Poole testified any sunlight would have a negligible effect on the lighting at the entrance to the elevator, ninety-five per cent of the available light at that point being from the display window. The expert testified five foot candles would be usual for lighting the entrance to an elevator. On cross-examination, to illustrate the amount of light provided by two foot candles, Poole testified he could, with such light, see counsel standing some three and a half full steps away from him.
14. Shapiro testified that with the display window light on, you could see whether the elevator car was on the first floor. Joanen testified that he could see to walk around the lobby and could see the elevator car was not there at the first floor.
15. From the foregoing evidence relating to the lighting present at the entrance to the elevator, we conclude that, regardless of what time the accident happened, there was enough light for a person to see whether the elevator car was or was not there upon making normal observation, even though the lighting was less than should have been provided by the building operator.
The trial judge decided the case on the basis of Barnett's contributory negligence, barring recovery. The trial judge concluded that the lighting was sufficient to see the elevator was not there and whether Barnett himself opened the door or whether it was already open, he could and should have seen the elevator was not in place before stepping into the empty elevator shaft. We concur in these findings, both as a matter of fact and of law.
Barnett, as a long-time tenant of the building who had previously used the elevator without an operator, was necessarily familiar with its general operations. Under the circumstances, he had the duty, for his own safety, to look before entering the elevator shaft. Although the exact manner of how the tragic accident happened will never be known, the only reasonable conclusion to be drawn from the known facts is that Barnett either did not *774 look or, if he looked, did not see what he could and should have seen. His own fault or lack of due care was a contributing legal cause of the accident, barring recovery by his survivors.
Breen v. Otis Elevator Company, 217 So.2d 776 (La.App.4th Cir. 1969) is authority for "the basic concept that it is negligence for a person to open the door leading to an elevator and step therein without looking". In that case an employee of a hotel opened the door of a manually operated elevator similar to the one in this case with the emergency or lunar key, was distracted by someone, and walked into the empty elevator shaft backwards without looking. The court pretermitted the issue of the defendant's negligence and found plaintiff contributorily negligent in failing to "exercise that minimum degree of care by looking in the direction in which he was walking in order to ascertain the presence or absence of the elevator". The principle that one using an elevator of the type involved in this suit must exercise at least a minimum degree of care by looking to see if the elevator car is present is sound. That principle, coupled with the rule that one is held to see that which he could and should have see if he had looked, is applicable here and renders the decedent contributorily negligent.
Plaintiffs cite Johnson v. Johness, 145 So.2d 588 (La.App.4th Cir. 1962), in which recovery was allowed by a maid who fell into an empty elevator shaft in an apartment building where she worked for one of the tenants. The elevator in that case was a self-service elevator equipped with an interlocking device which kept the door from being opened until the car was in position behind it. The interlocking device failed, plaintiff opened the door and stepped to the rear of the darkened area to turn on a light at the rear of the car, the car was not there, and plaintiff fell down the shaft.
The court held the defendant building owner negligent, applying res ipsa loquitur to the malfunction of the automatic self-service elevator. Plaintiff's employer was also found negligent in ordering the light in the elevator turned off when not in use, thereby forcing the maid to ordinarily step to the back of the dark elevator in order to turn on the light.
On the issue of plaintiff's contributory negligence, defendants argued plaintiff did not keep a proper lookout when she entered the elevator shaft. The court rejected this contention in view of the fact that plaintiff was accustomed to relying on the fact that the door would not open unless the car was in position behind it. Her reliance on the normal mechanical predictability of the elevator's safety devices was not negligence.
The Johnson case is distinguishable from the instant case on the issue of contributory negligence because the elevator in the Ward Building did not have an interlocking safety device and consequently the decedent had no reason to rely on it and was not relieved of his duty of observation.
Able counsel for plaintiffs vigorously argues the burden is on defendants to prove contributory negligence, which they have failed to do. Further, counsel argues that where there are no eyewitnesses it is presumed the decedent acted with due care for his own safety, citing Stansbury v. Mayor and Councilmen of Morgan City, 228 La. 880, 84 So.2d 445 (1955). These principles of law relied on by plaintiffs are correct and applicable to this case. Nevertheless, it is our opinion the burden of proof has been carried and the presumption of due care overcome by the known facts established by the evidence and the reasonable conclusions necessarily drawn therefrom.
Plaintiffs contend this case is governed by LSACivil Code Article 2695 which, they contend, imposes strict liability on a landlord for loss sustained by a tenant, regardless of negligence, and which precludes *775 a defense of contributory negligence. Article 2695 provides:
"The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnity him for the same."
Article 2695 is not applicable in this case because the loss did not result from a "vice or defect" in the leased premises. This Article contemplates a loss resulting from a physical vice or defect either in the original construction or by reason of failure to make repairs. There was no such vice or defect in the construction or maintenance of the elevator in this case. Although of somewhat ancient vintage, there is no evidence the elevator was not in sound condition or that it was not properly constructed for safe use when used as intended with an operator present. Any liability on the part of defendants in this case must be based on fault under LSA Civil Code Article 2315, and contributory negligence, under the jurisprudence, is a valid defense.
Having found decedent contributorily negligent, it is unnecessary to discuss negligence on the part of defendants. We are constrained to note, however, that we have reviewed the issue of negligence and, in the absence of contributory negligence, would conclude that the operator of the building was at fault and liable by reason of making available to tenants a manually-operated elevator without an operator and modern safety devices, combined with providing less than usual lighting.
For the reasons assigned, the judgment of the district court is affirmed, at appellants' costs.
Affirmed.

ON REHEARING
Before AYRES, PRICE, HALL and WILLIAMS, JJ.
AYRES, Judge.
A review of plaintiffs' application for a rehearing and a consideration of the merits of defendants' plea of contributory negligence, as well as a reconsideration of our conclusions reached in connection therewith, were the objects sought in the granting of a rehearing. The facts set forth and reflected in our original opinion are sufficient for the aforesaid purposes and need not be restated. It appears appropriate, however, to point out that we, in fact, found negligence on the part of the defendants in connection with the cause of decedent's death. In concluding our opinion, we stated:
"We are constrained to note, however, that we have reviewed the issue of negligence and, in the absence of contributory negligence, would conclude that the operator of the building was at fault and liable by reason of making available to tenants a manually-operated elevator without an operator and modern safety devices, combined with providing less than usual lighting."
However, we must emphasize that beyond mere speculation, conjecture, and assumption there is no evidence whatsoever in the record to establish any acts or omissions on the part of the deceased party that caused or contributed to the occurrence of the accident or to his death resulting therefrom. Pertinent here is the observation of the Supreme Court of this State through the late Associate Justice Amos Lee Ponder in Stansbury v. Mayor and Councilmen of Morgan City, 228 La. 880, 84 So.2d 445, 448 (1955), to the effect that:

"Whenever this defense [of contributory negligence] is pleaded it is incumbent upon the party pleading it to prove it by a preponderance of evidence. Clements *776 v. Louisiana Electric Light Co., 44 La.Ann. 692, 11 So. 51, 16 L.R.A. 43, 32 Am.St.Rep. 348; Layne v. Louisiana Power & Light Co., La.App., 161 So. 29, 35. It was pointed out in the Layne case that when a person is employed in the presence of a known danger, to constitute contributory negligence, it must be shown that he voluntarily and unnecessarily exposed himself to the danger and where there are no eyewitnesses to any act of negligence it is presumed that the decedent acted with ordinary care. The court in the Layne case quoted from Adams v. Iron Cliffs Co., 78 Mich. 271, 44 N.W. 270, 18 Am.St.Rep. 441 the following: `"`The reason for this rule is that life is dear to the normal person, and that he will not willingly do the thing which will extinguish it, but, on the contrary, will exercise due care to preserve it.'"'" (Emphasis supplied.)
This rule with respect to the burden of proof involving pleas of contributory negligence was also recognized by the Supreme Court in an opinion of Associate Justice Frank W. Summers in Deshotels v. Southern Farm Bureau Cas. Ins. Co., 245 La. 23, 156 So.2d 465, 467 (1963), wherein it was observed:

"In this connection the law is well settled that the defendant carries the burden of proving all facts necessary to establish the contributory negligence of the plaintiff. Smith v. Borchers, 243 La. 746, 146 So.2d 793 (1962); McCandless v. Southern Bell Telephone & Tel. Co., 239 La. 983, 120 So.2d 501 (1960), McClenaghan v. United States Fidelity & Guaranty Co., 79 So.2d 373 (La.App. 1955)." (Emphasis supplied.)
Our Supreme Court likewise recognized this rule in an opinion authored by Associate Justice Albert Tate, Jr., in Smolinski v. Taulli, La., 276 So.2d 286, 290 (1973). This rule with respect to the burden of proof of contributory negligence was also upheld and applied by our brethren of the Third Circuit in LeJeune v. State, Department of Highways, 215 So.2d 150, 153 (1968writ refused, 1969). Therein Judge Tate, now an associate justice of the Supreme Court, as author of the opinion, declared for the court that:

"He who relies upon contributory negligence bears the burden of proving the facts which justify application of this special defense. Deshotels v. Southern Farm Bureau Cas. Ins. Co., 245 La. 23, 156 So.2d 465. Where there are no eyewitnesses to any act of negligence, it is presumed that a decedent acted with ordinary care for his own safety. Stansbury v. Mayor, etc., Morgan City, 228 La. 880, 84 So.2d 445." (Emphasis supplied.)
See, also: Ginlee v. Helg, 251 La. 261, 203 So.2d 714 (1967); Lawton v. Abernathy, 253 So.2d 104 (La.App., 2d Cir. 1971).
Thus, the rule has been given uniform application to the effect that the burden of establishing contributory negligence is upon a defendant who relies upon that defense. There is, as also universally recognized, a presumption in instances such as exist here, that a decedent acted with due care and without negligence.
There is, accordingly, no burden or responsibility upon plaintiffs to establish states of facts which relate to the question of contributory negligence.
A statement of a few instances referred to in the present case suffices to point up the application of the rule. For instance, defendants contend there was no locking device on the eleveator and that decedent well knew that fact. The evidence is void of any proof to show what decedent knew or did not know about such a locking device. Nor is there any evidence that decedent frequented his office on Sundays and holidays or that he often used the elevator. Defendants further contend that their tenants had keys to the building and were fully aware of the manner in which the elevator was operated, and that, with this information, obviously the deceased paid no attention and made *777 no proper observation before or while attempting to enter the elevator. These are only unsupported assumptions, as was the condition of the lighting at the time decedent sustained accidental injuries resulting in his death. Conjecture, speculation, and supposition in the aforesaid respects and in the manner in which defendants rely to establish contributory negligence on the part of the deceased do not constitute the establishment of fault or negligence on his part.
Defendants contend that Johnson v. Johness, 145 So.2d 588 (La.App., 4th Cir., 1962cert. denied, 1963), is distinguishable from the instant case. The basis of this distinction is said to be that there was a locking device involved in that case whereas, to the knowledge of the decedent, no locking device existed in the instant case. As previously noted, there is no evidence as to what decedent knew, if anything, with reference to a locking device.
Similarity is stressed between the instant case and that of Breen v. Otis Elevator Company, 217 So.2d 776 (La.App., 4th Cir., 1969). The plaintiff in Breen had used the elevator on many occasions. There is no evidence to show that the decedent in the instant case ever used the elevator. Moreover, in the Breen case, plaintiff was held to have been contributorily negligent in backing into an elevator without looking. Moreover, in Breen, the light in the elevator burned continuously; whereas, in Johnson v. Johness, supra, and in the instant case the managers of the buildings had ordered that the lights be extinguished at night, on Sundays, and on holidays. In the Johnson case, plaintiff appeared as a witness and testified. Unfortunately, testimony of the deceased in the instant case was unavailable. There is, however, as already noted, a presumption in his favor that he acted with due care.
As was observed in Ross v. Sisters of Charity of Incarnate Word, 141 La. 601, 75 So. 425 (1917):
"While the owner of a passenger elevator operated in a business building for carrying passengers up and down may not be a carrier of passengers in the sense that he is bound to serve the public, yet his duty as to protecting the passengers in his elevator from danger is the same as that applicable for the carrier of passengers by other means, and he is bound to do all that human care, vigilance, and foresight can reasonably suggest under the circumstances, and, in view of the character of the mode of conveyance adopted, to guard against accidents and injuries resulting therefrom; and a failure in this respect will constitute negligence rendering him liable. He owes the same duty to those who by invitation, express or implied, are transported in the cars of such elevator, to exercise the highest care, in view of the character of the mode of conveyance adopted, as to the safety of the car and all appliances. 6 Cyc. 596 and 622; Yarbrough v. Swift & Co., 119 La. 344, 44 South. 121." (Emphasis supplied.)
As was found in our original opinion, the conclusion is inescapable that negligence in the occurrence of the accident has been adequately established on the part of the defendants. We now find and conclude the defendants have failed to carry their burden of proof and establish their defense of contributory negligence on the part of the deceased party.
Remaining for consideration is the matter of the quantum of damages to which plaintiffs are entitled.
At the time of his death, Charles Lee Barnett was 58 years of age with a life expectancy of 15.39 years. He had been married to plaintiff Ann Runyon Barnett for 26 years. Of their marriage five children were born, namely: Andrea Lee Barnett Toth, aged 24; Robert Bruce Barnett, aged 22; Kathy Sue Barnett Spillers, aged 19; Peggy Ann Barnett McDuff, aged 18; and M'Lou Denise Barnett, aged 15, all of whom are likewise plaintiffs herein, the *778 last-named appearing herein represented by her mother as her natural tutrix. Barnett was an attorney and, as such, earned, during the last three years of his lifetime, an average of $16,618.24 per annum.
In the determination of awards of this character, the rule appears to be well established that the courts have a duty to fix such awards after giving appropriate consideration to the deflated value of our currency. Brantley v. Employers Liability Assurance Corp., Ltd., 232 So.2d 825, 826 (La.App., 2d Cir., 1970); Scott v. Claiborne Electric Cooperative, 13 So.2d 524 (La.App., 2d Cir. 1943).
While under pronouncements in Gaspard v. LeMaire, 245 La. 239, 158 So. 2d 149 (1963), and subsequent holdings, awards of damages should be based upon the facts shown to exist in each particular case and not solely from a consideration of uniformity, we do refer to awards in prior cases to determine whether we abuse the discretion vested in us in appraising the awards made here. Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964).
In the determination made, the awards are, in our opinion, neither inadequate nor excessive.
We may here observe that the record establishes a close family relationship existed among the decedent, his wife, and children, a relationship evidenced by love and affection.
This court, in Fairbanks v. Travelers Insurance Company, 232 So.2d 323, 328 (1970writ refused, 1970), awarded $89,333.00 to each of three widows whose husbands were 41, 41, and 46 years of age, respectively, and whose annual incomes were approximately $5,000.00 each. These awards included loss of future support as well as loss of love, companionship, and affection. Although the deceased parties in the cited case were younger than the decedent in the instant case, the income of the deceased here exceeded by three times that of the average income of the decedents in the cited case.
In Tison v. Fidelity and Casualty Company of New York, 181 So.2d 835, 841 (1965), this court increased an award for the loss of support, love, and affection of a husband for his wife from approximately $70,000.00 to $100,000.00. The decedent there was 41 years of age and had annual earnings of approximately $10,000.00.
In Bohlender v. Bayou Tours, Inc., 156 So.2d 255, 268 (La.App.1963cert. refused, 1963), the Fourth Circuit awarded a widow of a 61-year-old man who had earned takehome pay of $6,260.10 in the year prior to his death, $65,000.00. The deceased there was three years older than the deceased in the instant case, but the earnings of the deceased here were more than two-and-a-half times those of the deceased in the cited case.
We have determined, after a thorough consideration of all the facts and circumstances, that an award of $85,000.00 for the surviving spouse for her loss of future support, love, and affection is as adequate as is possible from a monetary standpoint.
For the major children, we may point out that in Soileau v. Continental Insurance Company, 228 So.2d 522 (La.App., 3d Cir. 1969writ refused, 1970); in Waters v. Southern Farm Bureau Casualty Ins. Co., 212 So.2d 487 (La.App., 3d Cir. 1968); and in Parker v. Smith, 147 So.2d 414 (La. App., 2d Cir. 1962), major children were awarded the sums of $7,500.00 each as damages on account of the loss of their fathers.
Taking into consideration the deflated purchasing power of the dollar, we have concluded that an award of $10,000.00 to each of the major children is sufficient in the instant case.
The fifth child, a minor, only 15 years of age at the time of her father's death, it must be observed, was not only entitled to but was actually receiving support *779 from her father's earnings. This, she had a legal right to expect to continue during her minority. In comparable circumstances, the following awards have been made:
In Luttrell v. State Farm Mutual Automobile Ins. Co., 244 So.2d 97 (La.App., 3d Cir., 1971), $25,000.00 was awarded to each of two minor children on account of the death of their father whose annual earnings were from $9,000.00 to $10,000.00. The ages of the children and the father were not given.
In Morgan v. Toups-Cook Truck Sales, Inc., 194 So.2d 366 (La.App., 1st Cir., 1966), the deceased, a farmer, 39 years of age, whose income was not given, left three children whose ages were 16, 14, and 13 years, respectively. Each was awarded, for the father's death, the sum of $25,000.00.
In Tison v. Fidelity and Casualty Company of New York, supra, this court awarded a minor daughter of college age the sum of $25,000.00 for the death of her father, aged 41 years, with annual earnings of $10,000.00.
For the loss of such support and for the loss of her father's love and affection, we conclude the minor M'Lou Denise Barnett is entitled to an award of $25,000.00.
Expenses of the deceased's last illness and those incidental to his funeral and interment aggregated $2,992.25. The award to the surviving widow should therefore be increased to include these expenses.
Therefore, for the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed there be judgment herein in favor of plaintiffs as follows:

Ann Runyon Barnett $87,992.25
Andrea Lee Barnett Toth 10,000.00
Robert Bruce Barnett 10,000.00
Kathy Sue Barnett Spillers 10,000.00
Peggy Ann Barnett McDuff 10,000.00
Ann Runyon Barnett, mother
 and natural tutrix (and for
 the use of M'Lou Denise
 Barnett) 25,000.00

against the defendants, Safe, Inc., Trinity Universal Insurance Company, Hallie Ward Hargrove, Alice Ward Fowler, and Cornelia R. Moreland, in solido, with legal interest on each of said sums from judicial demand until paid, and for all costs.
Inasmuch as the awards were herein initially determined, plaintiffs are, of right, entitled, if they see fit, to urge an application for a rehearing in connection therewith. Defendants, since they have had no occasion to apply for a rehearing, have, as a matter of course, such rights with respect to all phases of the case without reservation of rights therefor.
Reversed and rendered.

ON APPLICATION FOR REHEARING
PER CURIAM.
In our original decree this court made an award of $25,000 in principal in favor of Ann Runyon Barnett, mother and natural tutrix (and for the use of M'Lou Denise Barnett). Upon reviewing the record, in considering defendants' application for a rehearing, our attention was attracted to the fact that the aforesaid minor had reached the age of 18 years and, moreover, had been substituted as a party plaintiff in her own right and behalf.
Therefore, the judgment is now amended by substituting M'Lou Denise Barnett in lieu of her mother and natural tutrix so far as concerns the aforesaid award. As thus amended, our original decree is reinstated and made final. The application of defendants for a rehearing is denied.
BOLIN, J., took no part.