ANGEL FIGUEROA, Plaintiff and Appellant, v. PORTO RICO RAILWAY, LIGHT & POWER CO. ET AL., Defendants and Appellees. DOMINGO FUENTES VARGAS, Plaintiff and Appellant, v. SAME. LAUREANO GONZÁLEZ, Plaintiff and Appellant, v. SAME. GERTRUDIS TORRES DE GARCÍA, Plaintiff and Appellant, v. SAME.

Nos. 9071, 9072, 9073, and 9074. Argued April 3, 1946.—Decided July 24, 1946.

*Ismael Soldevila* for appellants. *Brown, Newson & Córdova* for appellee Porto Rico Railway, Light & Power Co. *Hugh R. Francis* and *Vicente M. Idrach* for appellee *Miguel Wiewall, Jr.*

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

In the District Court of San Juan, four actions for damages were brought against the Porto Rico Railway Light & Power Co. and Miguel Wiewall, Jr.—the first by Domingo Fuentes for certain injuries received by him; the second by Angel Figueroa, for the death of his son Félix Figueroa; the third by Laureano González, for the death of his son Carlos González; and the fourth by Gertrudis Torres widow of García, for the death of her son, Laureano García Torres, the complaints therein being numbered 30933, 30970, 30984, and 31023, respectively. The essential allegation on which each of the plaintiffs bases his or her action and which is transcribed below, as the same appears from the complaint in the case that involves the death of Félix Figueroa, reads as follows:

466

"7.  The death of plaintiff's son aforesaid was due to the contemporaneous and joint carelessness and gross negligence of both defendants, Porto Rico Railway, Light & Power Co. and Miguel Wiewall, Jr., the first of whom kept totally unguarded and without any insulation, netting or protection, the electric wire or cable in question notwithstanding the same was located in a thickly-settled section, at a short distance from occupied dwelling houses, over a street where traffic was heavy within the urban zone, and despite the fact that said defendant was aware of its duty in this connection;  it failed to fulfill its duty to place a sign warning of the dangerous character of the wire by reason of the heavy current which it continuously then carried and still carries;  it did not maintain circuit breakers or any device which would automatically and immediately shut off the current whenever the wire should come in contact with a foreign body;  it failed to stop or cut off in time the flow of current over the electric wire or cable when such contact occurred, or to adopt any effective measure to avoid the death of Félix Figueroa, all which it could have done;  and the second defendant failed to warn Félix Figueroa of any existing danger, of which the latter was unaware, or to caution any of the persons who were working there not to allow the making of any contact with the wire of the Porto Rico Railway, Light & Power Co., or to furnish Félix Figueroa with gloves made of rubber or any other suitable material, or to explain to him the necessity or convenience therefor in the event that contact was made with any wire charged with electricity or to take any step to avoid the occurrence, which he could have avoided."

By stipulation of the parties, the four cases mentioned above were consolidated for the purposes of the trial and, as thus consolidated, they have been submitted to us.  After a trial had upon the complaints and answers filed, the lower court on December 19, 1941, rendered judgment dismissing the actions and adjudging the plaintiffs to pay the costs. The plaintiffs thereupon appealed and in support of their appeals they have assigned six errors; thus:

"1. The district court erred in not holding that the said defendant was negligent because it violated the municipal ordinance which required of it a protective covering for the wires, warning signs on the poles carrying primary wires, and netting on the angles.

"2. The district court erred in holding that the defendant Miguel Wiewall, Jr. was not negligent nor liable for the damages suffered by the plaintiffs.

"3. The district court erred in deciding that if the workmen allowed the pipe in question to fall and make contact with the wires, such action, and not any carelessness on the part of the defendant, was the proximate cause of the occurrence.

"4. The district court erred in holding that the defendant, Porto Rico Railway, Light & Power Co., was not negligent in keeping its electric wires uninsulated or unguarded as there was no duty on its part to do otherwise.

"5. The district court erred in not finding that the electric company lacked adequate appliances and failed to shut off the current in time, for which reason it is responsible for the damages caused.

"6. The judgment rendered against the plaintiff is erroneous and contrary to law, inasmuch as it should have been rendered against the defendants because of their concurring negligence, or against either of them who was responsible for the accident."

For a better understanding of the questions to be considered and decided in the present appeal, it seems advisable to make a brief summary of the facts shown by the evidence introduced in these cases.

On or about June 11, 1938, defendant Miguel Wiewall, Jr., decided to erect, in the yard of the house belonging to his brother-in-law, Jorge Dávila, located at No. 11, Miramar Street, Santurce, Puerto Rico, a radio antenna which was to be attached to the tops of two galvanized-iron pipes or poles, and for that purpose, and in order to help on this work he called, directly or otherwise, upon Domingo Fuentes, plaintiff herein, Félix Figueroa, Carlos González, and Lorenzo García. The wires of the defendant, Porto Rico Railway, Light & Power Co., are strung over Miramar Street, and in front of said house they are supported by two poles having crosspieces; six wires are attached to the upper crosspiece and three to the lower one; the first wire to the right of the upper crosspiece, strung from north to south, carries no electric current during the daytime; the second is "ground" and carries some current; the third, fourth, and fifth are

charged with a 2,300-volt current, and the sixth is in the same condition as the first. The lower crosspiece supports three wires carrying 110 volts each, they are called secondary, and are used to supply current to the dwelling houses. There is a distance of 60 feet between both poles. The house in question is located between Fernández Juncos and Nueva Palma Avenues, and stands at the corner of the latter avenue. The pole nearest the first-named avenue measures 35 feet, and the other one, located at the corner of Nueva Palma and Miramar Streets, is 40 feet high. The wires attached to the upper crosspiece, which are called primaries, are strung at a height of 32 feet above the street level. The lower crosspiece lies at a distance of 2 feet from the upper one, and, together with the wires attached thereto, at a height of 29 feet above the ground. These poles stand on the curb of Miramar Street, one of them at a distance of 8 feet and the other one a little farther, from the fence which separates the street from the house lot, and the house stands at a distance of 13 feet from the fence, the distance between the house and the pole being therefore 21 feet. On the day in question a hole was dug in the yard of the house, at a distance of 6 feet from the fence, where a 40-foot galvanized-iron pipe was to be placed. Directed by codefendant Wiewall, the workmen started their work and, while Carlos González held the pipe to be placed in the hole, Domingo Fuentes, Félix Figueroa, Lorenzo García, and Wiewall himself held each a guy wire in order to steady the pipe, and just as the pipe stood upright in the hole, in some unexplained way, it fell and came in contact with the third wire supported by the upper crosspiece which carried a 2,300-volt current, thus establishing a short circuit with the bodies of the workmen and Wiewal which caused the deaths of Lorenzo García, Carlos González, and Félix Figueroa, and injuries to Domingo Fuentes and Wiewall.

The appellants urge that the lower court erred in not holding that defendant Porto Rico Railway, Light & Power

Co. was negligent because of its violation of the municipal ordinance of the City of San Juan, whereby it was required to keep its electric wires covered, warning signs on the poles supporting primary wires, and netting on the angles in order to protect life and property. Against that contention, the appellee company maintains that the ordinance in question is void, and it was so held by the lower court, as it considered that the Municipality of San Juan lacked power to enact the same. We will not go into the question of the validity or nullity of the ordinance, since for the purpose of this appeal we deem it unnecessary to do so, inasmuch as our viewpoint is the same as the one set forth by the late Justice Texidor, of this court, in his concurring opinion in the case of *Arreche* v. *Porto Rico Railway, Light & Power Co.*, 40 P.R.R. 286, where he said:

"If there was any express regulation as to the speed to be maintained when passing over the place of the accident, or any duty imposed by law or ordinance as to ringing the bell at that place, the failure to comply with such existing regulation or provision would constitute negligence. In the absence of such regulation, statute or ordinance, the omission must then be considered with reference to the doctrine of negligence or lack of ordinary care, required under the circumstances."

We will consider jointly assignments Nos. 2, 3, and 4, as they all deal with the same question, to wit, the negligence charged against the defendants by the appellants. The essential question to consider and decide in this appeal, under the pleadings and the proof, is whether the negligence attributed to the defendants was the proximate cause of the accident.

Was Miguel Wiewall, Jr., bound to caution his laborers or workmen against possible accidents and to equip them with means of protecting their lives? Did the failure to insulate the wires, as charged against the company, or the omissions attributed to Wiewall constitute the proximate cause of the accident?

470

We can not overlook the fact that the work which Wiewall asked his workmen to perform was not connected, either directly or indirectly, with any electric current, and that according to the evidence in the instant cases, the place where the work was to be done was located at certain distance from the high tension wires, charged with electricity, which were attached to the poles at a height of 32 feet over the street level, it being therefore possible, but not probable, that a 40 foot galvanized-iron pipe, upon being vertically erected on the ground, would fall on the electric wires in question, and, upon making contact with the latter, would establish a short circuit, causing the above-mentioned accident. We can not assume that Wiewall should have anticipated that the iron pipe would fall and thus come in contact with the wires of the defendant company. The applicable rule in cases of this sort is that the consequences of a negligent act which should have been foreseen are those that lie within the range of probabilities and not merely of possibilities. See the work of Sherman & Redfield On Negligence, Revised Edition (1941), vol. 1, p. 95, § 35, where it is said:

" . . . 'The consequences of the negligent act must be within the range of probability as viewed by the ordinary man, and consequences which are merely possible cannot be regarded as either probable or natural. The alleged consequences of the act here claimed to have been negligent are not such as could reasonably have been foreseen or anticipated. One is bound to anticipate only the reasonable and natural consequences of his conduct.'

"Probability of consequence implies expectation thereof. 'One is not responsible for consequences which are merely possible, but only for those which are probable according to ordinary and usual experience . . . Probable consequences are to be anticipated and not those which are merely possible . . . . The natural and probable consequences are those which human foresight can foresee.' "

Assuming that Wiewall was bound to warn his workmen of the existence of danger and to protect them against the latter, we ask ourselves: Was his omission to act the proximate cause of the accident? We think not. The general

rule in this connection is that, even though an employer fails to take proper precautions to protect the lives of his employees, he can be held liable for any damages suffered by the latter only where there is a casual connection between his negligence and the injury caused. See the work American Jurisprudence, vol. 35, p. 555, § 126, from which we copy the following:

"Notwithstanding an employer has been guilty of failure to exercise ordinary care for the safety of his employees as required by the common law, or of failure to comply with a statutory duty imposed for the benefit of employees, he can, in the absence of any statutory imposition of liability, be held liable for injuries to his employees only if there is a causal connection or relation between his negligence and the injury of which the employee complains . . . . An employer is not liable for injuries to an employee unless the injury is the proximate result of wrongful conduct chargeable to the employer."

The proximate cause of the accident, as shown by the evidence herein, was the fact of the iron pipe coming in contact with the electric wires and not the omission on the part of defendant Wiewall to instruct his workmen nor his failure to equip them with rubber gloves or other protective means; in other words, in this case there was an intervening or independent cause not produced by any act or omission chargeable to Wiewall which was the proximate cause of the accident. See *Colón* v. *Shell Co.*, 55 P.R.R. 575, 600.

Having discussed all the matters connected with the defendant Wiewall, we now turn to consider the facts charged against the defendant company as constituting negligence. Apart from any duty of the defendant company to keep covered the high tension wires which pass over Miramar Street at a height of 32 feet above street level, was the failure to insulate or cover the wires and to place warning signs on the poles carrying primary wires the proximate cause of the accident?

The decisions on the question raised in this litigation maintain that the transmission wire of a high tension electric current is a serious danger to life and property, because the slightest contact with it may cause the death of a human being and the destruction of property. For this reason, the adjudicated cases require that those who engage in the business of generating and distributing electricity should use the highest degree of care in order to avoid causing harm, although they hold that the persons or concerns engaged in this business do not have the liability of an insurer, for they are liable only in those cases where through their fault or negligence damages are caused which are due to their failure to use a degree of care and diligence proportionate to the danger which the use of electricity carries with it. See *Matos v. P. R. Railway, Light & Power Co.,* 58 P.R.R. 162.

This court in the case of *Matos v. P. R. Railway, Light & Power Co., supra,* speaking through Mr. Justice De Jesús, has already laid down the doctrine to be followed in cases similar to the present one in connection with the duty to insulate high tension electric wires at those places where there is reason to expect that persons will come in contact with them. To that effect it said:

"Since transmission wires carrying a high tension current are not dangerous unless they come in contact with human beings, the decisions of courts require that they be insulated only when there is a probability that there may be such a contact."

In 9 Ruling Case Law, 1213, § 21, the rule is stated in the following terms:

"*Insulation at Particular Points or Places.*—It is only reasonable that the duty of providing insulation should be limited to those points or places where there is reason to apprehend that persons may come in contact with the wires, and the law does not compel electric companies to insulate their wires everywhere, but only at places where people may go for work, business, or pleasure, that is, where they may reasonably be expected to go."

In order to illustrate the doctrine set forth above we will cite below several cases in which the courts have applied it.

In *Webb* v. *Louisiana Power & Light Co.*, (La.) 199 So. 451, the court held that a power company was not liable for the electrocution of a person who allowed an iron pipe to come in contact with an uninsulated distribution line located at a height of 24 feet above the ground, since the company could not reasonably have anticipated that the decedent would handle a 30-foot pipe in such a way as to make contact with the line. The court said:

"It appears to us that defendant fulfilled all legal duties imposed on it. Although the wires in question were not insulated, there was a compliance with the other alternative, namely, the placing of them beyond the danger line of contact with human beings. While engaged in the ordinary course of their affairs, pedestrians would experience no harm from them. Defendant could not have reasonably anticipated that decedent would withdraw from the ground connected well pipe of a length, here more than 30 feet, that would make contact with the transmission line."

In *Bujol* v. *Gulf State Utility Co.*, (La.) 147 So. 545, there was also involved an iron pipe which had come in contact with high tension wires, and it was held that the company was not required to cover the wires as it was not bound to anticipate that a pipe would come in contact with its wires. The court said:

"It is not disputed that the wires of the defendant company at this point in its line were not insulated, but the evidence shows that a line of this kind is not generally insulated, and that the National Bureau of Standards whose rulings govern in their construction does not require that they be. The duty of insulation seems to be limited, according to the authorities as we read them, 'to those points or places where there is reason to apprehend that persons may come in contact with the wires, and the law does not compel electric companies to insulate their wires everywhere, but only at places where people may go for work, business or pleasure, that is, where they may reasonably be expected to go.' "

■■■ Even assuming that the failure of the defendant company to insulate the wires in question might be considered as negligence, such failure, we think, was not the direct and proximate cause of the accident. In *Colón* v. *Shell Co.*, 55 P.R.R. 575, 600, referring to the intervention of an independent agent as the proximate cause of the accident, we said:

"To uphold the theory that the damages caused to another are the result of the intervention of an independent agent, it is a requisite *sine qua non* that at the time the force which caused the damages was loosened, the independent agent had no existence or if it did exist, that it be ignored by the defendant and that he could not reasonably foresee it, since if it existed, and was known by the defendant, or even though not known could have been reasonably foreseen, then the supposed independent agent is no more nor less than a fact or circumstance that the defendant should have had in mind in acting or refusing to act in the manner that he did."

In the case at bar, but for the intervention of an independent agent, the accident would not have occurred. Such an agent was undoubtedly the fall of a 40-foot iron pipe upon the high tension wires of the defendant company, without there being any showing by the appellants as to the cause of that fall or as to whether the latter was due to any negligent act attributable to the defendants. Under such circumstances, was the defendant company bound to anticipate an independent act of this sort and to take precautionary measures to avoid its consequences? We think not and we base our position on the holding of this court in the case of *Matos* v. *P.R. Railway, Light & Power Co., supra.* See also *Green* v. *West Penn. Ry. Co.*, 246 Pa. 340, 92 Atl. 341. We are of the opinion that the defendant could not reasonably have anticipated the circumstances which caused the accident in the instant cases. It could not reasonably have anticipated that a person, other than one of its employees or connected with it, would let fall on its electric lines a pipe 40 feet long. The doctrine laid down in the case of *Matos* v. *P. R. Rail-*

*way, Light & Power Co., supra,* is perfectly applicable to the case at bar. Everything that has been said regarding the negligence attributed to the defendant company by reason of its failure to insulate the wires equally applies to the negligent omission to place warnings of danger on the primary poles or to use a netting on the angles. If such duty existed, the omission charged was not the proximate cause of the accident. For the reasons stated we think that the errors assigned were not committed.

In their fifth assignment, the appellants urge that the proximate cause of the accident was the failure of the defendant company to maintain adequate appliances or circuit breakers and to shut off the current in time. In the case at bar, two electrical engineers, Carlos Zabater and Manuel Font, testified for the defendant company. Their testimony was confined to the functioning and purposes of automatic breakers. They stated that automatic breakers can not avoid the danger of an electric current passing through a human body when the latter comes in contact with the wires, for in such case the current which passes through the human body is the one that produces the short circuit, which starts the functioning of the automatic breaker; but by the time the breaker acts, especially where there is involved a 2,300-volt current, the damage has already been done. In other words, the function of an automatic breaker is to give warning of the existence of an accident or danger and not to prevent it. According to the evidence and the findings made by the lower court, the deaths and the injuries caused were instantaneous. This evidence does not appear controverted by the one introduced by the appellants, and hence we must accept it as true. We also think that the failure of the defendant company to try to shut off the current immediately after the accident was not the proximate cause thereof, since the unfortunate event had already taken place. The error assigned has not been committed.

█ Lastly, the appellants urge that the judgment rendered against the plaintiffs is erroneous and contrary to law, and that it should have been entered against the defendants because of their concurring negligence, or against either of them who was responsible for the accident. We have carefully examined the evidence adduced in the instant cases, and there is no basis in the records to conclude that the lower court committed manifest error in the weighing of the evidence or that the judgment is not in accord with the law.

For all the foregoing reasons, the judgments appealed from should be affirmed.

Mr. Justice Córdova did not participate herein.